ROBINSON *v.* INDIANA & ARKANSAS LUMBER & MANUFACTURING COMPANY.

Opinion delivered April 16, 1917.

1. CONSTITUTIONAL LAW — EXEMPTION FROM TAXES. — An exemption from taxes created by the Constitution will not be given a retrospective effect unless an intention that it shall have such an effect is clearly expressed, and *held*, Art. 16, § 5, Const. 1874, did not operate retrospectively.

2. ST. FRANCIS LEVEE DISTRICT—GOVERNMENAL AGENCY.—The St. Francis Levee District is a quasi-corporation, to which has been delegated certain powers as a governmental agency.

3. TAXATION—EXEMPTION.—Under the Constitution of 1874, it is only when the property itself is actually and directly used for public charity, that it is exempt from taxation.

4.   ST. FRANCIS LEVEE DISTRICT—PURCHASE OF LANDS AT OWN TAX
SALE—EXEMPTION FROM TAXES.—Lands were sold for the non-pay-
ment of taxes due the St. Francis Levee District, and were pur-
chased by the district, and sometime later the district sold them.
*Held.*   The levee district acquired the lands in the exercise of its
governmental functions, and that during the interval between its pur-
chase and resale of the lands, that they were not subject to taxation.

Appeal from Crittenden Chancery Court; *C. D.
Frierson*, Chancellor; reversed.

*R. C. Brown*, of Memphis, for appellant.

1.   These lands were not subject to taxation for
State and county purposes after they were purchased by
the levee district, a governmental agency.   105 Ark. 261.
The lands are nontaxable.   93 Ark. 490, 495; 95 *Id.* 65;
105 Ark. 261; 59 *Id.* 513; 103 *Id.* 127, 138-9; 107 *Id.* 189,
198; 90 *Id.* 236, 239; 79 *Id.* 550; *Ib.* 565; 36 *Id.* 155, 23 L.
R. A. 200; 49 L. R. A. (N. S.) 1026; 110 Ark. 416; Acts
1899, p. 48; Acts 1903, p. 58; 77 Ark. 519 is not applicable.
41 Ark. 45 has been overruled.   77 Ark. 177; 88 *Id.* 533.
See, also, 93 Ark. 490.

2.   The statute of limitations does not run.   Nor is
the State estopped.   39 Ark. 580; 42 *Id.* 118; 93 *Id.* 496; 95
*Id.* 65; 77 *Id.* 324; 105 *Id.* 261; 107 *Id.* 189, 198; 90 *Id.* 236;
3 L. R. A. (N. S.) 746, 748; 47 *Id.* 907; 21 L. R. A. 63; 16
*Id.* 145; 56 Ark. 339.

3.   The exemption acts are constitutional.   19 Ark.
360, 372; 21 *Id.* 4058; 49 L. R. A. 604, 609; 38 L. R. A. (N.
S.) 907; 12 *Id.* 1163; 10 L. R. A. 377; 16 L. R. A. (N. S.)
842; 103 S. W. 354; 27 So. 348; 110 La. 585; 4 Dillon on
Mun. Corp. (5 ed.), 2436; 34 L. R. A. 146; 34 L. R. A. (N.
S.) 143; 116 Tenn. 260.

4.   Appellee has not paid taxes for seven years.   94
Ark. 122; 99 *Id.* 447; 114 *Id.* 376; 107 *Id.* 492; 89 *Id.* 296.
The act of 1899 does not apply.

5.   There has been no laches.   105 Ark. 268; 45 *Id.*
81; 68 Tenn. 129; 92 Ark. 497; 107 *Id.* 251; 105 *Id.* 663,
etc.; 99 *Id.* 500; 103 *Id.* 251, 259, 260.

6. There is no element of estoppel. 93 Ark. 490; 105 *Id.* 268. The chancellor erred in his finding of facts and in holding that the lands were taxable. 78 Wash. 236; 139 Pac. 194; 145 *Id.* 458; 183 S. W. 1032; L. R. A. 1916-E 94, 97.

*Daggett & Daggett,* for appellee.

1. The title is barred by the act March 18, 1899. The lands were subject to taxation. 77 Ark. 519; 62 *Id.* 481; 57 *Id.* 445; 95 *Id.* 64. The attempted exemption is void. 55 Ark. 148; 69 *Id.* 284; 59 *Id.* 513; 58 *Id.* 151; 41 *Id.* 45; 93 *Id.* 490; 30 *Id.* 693; 40 *Id.* 34; 46 *Id.* 312; 120 U. S. 97; 62 Ark. 481; 57 *Id.* 445.

2. Appellant is barred by the seven years' tax act.

3. The district is estopped, and guilty of laches. 112 Ark. 467; 81 *Id.* 244; Acts 1901, p. 160, § 1, etc.; 90 Ark. 430; 95 *Id.* 6; 99 *Id.* 455. The decree is correct.

### STATEMENT BY THE COURT.

J. L. Robinson instituted this action in the chancery court against the Indiana & Arkansas Lumber & Manufacturing Company to quiet the title to certain wild and unoccupied lands in Crittenden County, Arkansas. The lumber company defended on the ground that it had acquired title by the payment of taxes for seven years under the act of March 18, 1899, and that the plaintiff had been guilty of laches in bringing his suit.

The material facts are as follows: The lands in controversy were originally owned by Robert C. Brinkley, He died in 1878, and by the terms of his will the lands became the property of his children. The board of directors of the St. Francis Levee District instituted an action in the chancery court under our statute to enforce the collection of delinquent levee taxes for the year 1898. The whole of the northeast quarter of section 6, township 4 north, range 7 east, containing 409 acres in Crittenden County, Arkansas, was sold under the decree, and the levee district became the purchaser at its own sale. On September 11, 1899, the levee district conveyed to the

defendant along with 20,000 acres of other lands, lots
15, 16, 17 and 18 of the northeast quarter of said section
6, for the sum of $1.00 per acre. On the 17th day of Febru-
ary, 1916, the devisees under the will of R. C. Brinkley
executed a quitclaim deed to the defendant for these lots
as well as the lots herein sued for.  On the 6th day of
October, 1915, the levee district executed a deed to plain-
tiff to lots 1, 2, 7, 8, 9 and 10 of the northeast quarter of
said section 6, containing 249.19 acres, and on the 22d
day of December, 1915, plaintiff instituted this action
against the defendant to quiet his title to said lots.  The
lots in controversy have greatly increased in value since
they were purchased by the levee district at its sale for
levee taxes.  It was shown by the defendant that a pur-
chaser at a tax sale for the taxes of 1887, which is con-
ceded to be void, executed to it a warranty deed to said
lots.  It was also shown by the defendant that it had paid
the taxes on said lands for seven years under the act of
March 18, 1899, and that the lands have always been wild
and unoccupied and have never been in the actual posses-
sion of any one.

The court held that the plaintiff was barred of relief
by reason of the payment of taxes by the defendant for
more than seven years under color of title and a decree
was entered dismissing the plaintiff's complaint for want
of equity.  The plaintiff has appealed.

HART, J., (after stating the facts).  The correctness
of the decision of the chancellor depends upon whether or
not the lands in controversy in this case were subject to
taxation for county and State taxes after they were pur-
chased by the levee district at its own sale for levee taxes.
Article 16, section 5, of the Constitution of 1874, provides,
that all property subject to taxation shall be taxed ac-
cording to its value, provided that the following property
shall be exempt from taxation; public property used
exclusively for public purposes; churches used as such;
cemeteries used exclusively as such; school buildings

and apparatus; libraries and grounds used exclusively
for school purposes, and buildings and grounds and ma-
terials used exclusively for public charity.

Section 6 provides that all laws exempting property
from taxation other than is provided in this Constitution
shall be void.

(1)    It is insisted by both parties that this question
has already been decided in their favor by a previous
decision in this court.    Counsel for the defendant rely
upon the case of *Bonner* v. *The Board of Directors of St.
Francis Levee Dist.,* 77 Ark. 519.    There the court said
that the lands in controversy continued subject to taxa-
tion after they were acquired by the St. Francis Levee
District.    The levee district had purchased the lands in
that case on the 24th day of January, 1898, for unpaid
levee taxes and on the second Monday in June, 1898, Bon-
ner purchased the same land at a sale for State and
county taxes.    There the assessment had been completed,
and the State and county taxes had become a fixed lien
on the lands before their purchase by the levee district,
and the court simply meant to hold that a change in the
use of the property after the State and county taxes had
become a lien did not release the land from liability for
such taxes.    The reason is that to so hold would be to give
a retrospective effect to the section of the Constitution
above referred to.    An exemption from taxes created by
the Constitution will not be given a retrospective effect
unless an intention that it shall have such an effect is
clearly expressed and it is apparent that the section of
our Constitution relating to this subject was not intended
to operate retrospectively.    *City of Philadelphia* v. *Penn-
sylvania Institution for Instruction of Blind,* 214 Pa. St.
138, 6 A. & E. Ann. Cas. 437, and case note.    So it will be
readily seen that the *Bonner case* is not an authority for
the position taken by counsel for the defendant.

Counsel for plaintiff rely on the case of *Miller* v.
*Henry,* 105 Ark. 261.    There the court, at the end of an
opinion, which was devoted almost exclusively to other

propositions, said the lands which had been bought in by the St. Francis Levee District at a sale for levee taxes were not subject to taxation while in the hands of the levee district, but no reason was given for such holding.

We now propose to take up the question and decide it anew for the reason that it is now earnestly insisted that such a holding is in direct conflict with the holding of this court in *School District of Fort Smith* v. *Howe,* 62 Ark. 481, and *Brodie* v. *Fitzgerald,* 57 Ark. 445.

(2)  The St. Francis Levee District is a *quasi*-corporation to which is delegated certain powers as a governmental agency. *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 513, and *Board of Dir. St. Francis Levee Dist.* v. *Fleming,* 93 Ark. 490. The correctness of the chancellor's holding depends upon whether the lands were acquired by the levee district in its proprietary capacity or in the exercise of its functions as a governmental agency. In the former case the lands would not be exempt and in the latter they would be exempt from taxation. This distinction, we think, has been recognized in our previous decisions relating to the question.

(3)  In the case of *Brodie* v. *Fitzgerald,* 57 Ark. 445, the court held that the hospital buildings, grounds and materials, under our Constitution, were exempt from taxation, but that the property leased or rented was not exempt though the revenues were applied solely to the subject of the public charity. The reason is that under our Constitution it is only when the property itself is actually and directly used for public charity that the law exempts it from taxation.

In the later case of *Hot Springs School District* v. *The Sisters of Mercy,* 84 Ark. 497, we held that a hospital building with the grounds connected therewith which was used in the operation of a public charity was not excluded from constitutional exemption from taxation merely because patients who were able to do so paid for the attention and medicine which they received, if the profits derived therefrom were put back into the opera-

tion of the public charity. There was a mixed use, so to speak, of the property, but the dominant purpose was the operation of the hospital as a public charity and the receiving of pay patients was merely incidental to the main purpose. So we held that the property was still actually and directly used for public charity, and that the Constitution exempted it from taxation.

In the case of *School District of Fort Smith* v. *Howe,* 62 Ark. 481, a portion of the military reservation at Fort Smith was donated by act of Congress to the city of Fort Smith to be held in trust for the use of the free public schools of the city. The act provided that within ten years the land should be laid off into lots, and that the lots be sold at public sale and that the proceeds should be paid to the treasurer of the school board to be used for school purposes. Afterward our Legislature passed an act providing that the School District of Fort Smith be empowered and required to become a purchaser at said sales and to own, lease, control and sell the same. The property involved in that suit was acquired by the school district by purchase under the act. Most of the property consisted of unimproved city lots, but some of the lots had buildings upon them and were rented. The court in its opinion recognized that the property did not contain any school buildings or libraries and grounds used exclusively for school purposes within the meaning of article 16, section 5 of our Constitution, and proceeded to a discussion of the question of whether it was public property used exclusively for public purposes within the meaning of that section of the Constitution.

The court said that to justify it in holding that the property was exempt there must be found in the Constitution, itself, provision for its exemption. The court further said that it was conceded that the land was public property, but the question of its exemption from taxation was not determined alone by its character as public property, but also by the nature of its use. After a thorough discussion of the question, the court correctly held that

the property was not exempt from taxation under our Constitution because it was held by the school district solely for sale or rent, and for the sale for profit, and was not, in the meaning of the Constitution used exclusively for public purposes, and was therefore subject to taxation. The construction is in accord with the almost unanimous holding of the courts of last resort of other States having a provision of the Constitution similar to our own. The reason for so holding is clearly stated in a quotation by the Supreme Court of Ohio in *Benjamin Rose Institute* v. *Myers, Treasurer,* L. R. A. 1916D-1170, from *Academy of Richmond County* v. *Bohler,* 80 Ga. 159, as follows: ''Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with property of other owners, it must bear the tax which their's bears.''

There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the actual use of the property and the use of the income. So it will be seen that in our own cases last referred to, the property itself was not directly occupied or made use of for public purposes, but only the income derived therefrom and for this reason the court held that the property was not exempt from taxation under our Constitution.

(4) In the present case the facts are essentially different. The St. Francis Levee District was created for the purpose of constructing and maintaining a levee along the Mississippi River on the eastern border of our State. To accomplish the purpose of its organization it was given the power of eminent domain and of taxation for levee purposes. The district was given the power to in-

stitute a suit to enforce the collection of delinquent levee taxes and to buy in the lands at a sale therefor when no one else offered to bid thereat, and then to again sell the land so acquired and to devote the proceeds to the use for which the levee taxes were intended. The lands in controversy were acquired by the levee district at a sale for levee taxes and were held by the levee district until it could dispose of them. Thus it will be seen that the levee district acquired the land in the exercise of its governmental functions, and during the interval between its purchase and resale of the lands, they were not subject to taxation. If the property should be taxed while so held by the levee district, new taxes must be levied to meet this tax. It is absolutely essential that taxes should be levied in order to carry out the purpose for which the levee district was organized, and if the property, which the levee district, to protect itself, purchased at a levee tax sale, was subject to State and county taxes while in its hands, the property owners of the levee district would have to pay additional taxes. The levee district only held the lands that it acquired at levee tax sale until it was practical to dispose of them again. They were not held for any purpose of gain or as income producing property. When sold, the proceeds took the place of the levee taxes, for the enforcement of which and the expenses incident thereto, they were sold, and in this way we think the lands were directly and immediately used exclusively for public purposes within the meaning of the Constitution, and were not subject to taxation.

Moreover, Judge Cooley says, that exemption from taxation of property which belongs to the State and its agencies, which are held by them for governmental purposes, rests upon implication. He said that to levy taxes upon such property would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the use-

less levy.  Cooley on Taxation (3 ed.), vol. 1, pp. 263 and 264; *Re Hamilton*, 148 N. Y. 310, 42 N. E. 717.

Having held that the property is exempt from taxation, the defense of the defendant necessarily passes out of the case.

It follows that the decree will be reversed and the cause will be remanded with directions to grant the prayer of the complaint.