LITTLE RED RIVER LEVEE DISTRICT No. 2 *v.* MOORE.

4-5353                                    126 S. W. 2d 605

Opinion delivered February 6, 1939.

946

*Culbert L. Pearce,* for appellant.

*Herbert Moody* and *Brundidge & Neely,* for appellee.

GRIFFIN SMITH, C. J. May 5, 1936, Little Red River Levee District No. 2, and Judsonia Drainage District of White County, sold to G. D. Moore the merchantable timber on lands of the two districts which overlapped. The lands were acquired by the districts through foreclosures of liens for betterments.

Moore sold the oak timber to J. H. Bailey. The districts executed a joint release in Bailey's favor. The contract between Moore and the districts called for a cash payment of $250. An additional payment of $3,250 was to be made on or before May 21, 1936, and final payment of $3,500 matured on or before November 21, 1936.

Agreement between Moore and the districts recited: "The vendors expressly reserve and retain a vendor's lien on all of said timber to secure the balance due on purchase money; and, if the vendee cuts, removes, or sells merchantable timber from said land to the extent, value and amount of $3,500 before said notes are paid, the excess shall be applied to the satisfaction of the balance due."[1]

---

[1] A provision of the contract following the direction for application of the "excess" is: "And to the end that the vendors may know the amount of all sales made by the vendee, he shall furnish them duplicate invoices and bills of lading, statements of receipts and disbursements, and on demand shall exhibit his books for inspection and examination by agents and representatives of the vendee."

Another provision is: "All timber not cut and removed by the vendee within five years from the date hereof shall revert to and become the property of the vendors. After cutting the timber the vendee shall surrender one-fifth of the total acreage each year to the vendors, in tracts contiguous to each other, but, if he needs more time for cutting the timber on any specified tract, he may have additional time, not to exceed one year, upon paying state and county taxes due on the particular tracts which he elects to hold over."

Before either of the two larger installments was paid, Moore consummated his deal with Bailey. Acceptance by the district was evidenced in writing.[2] Bailey's payment of $4,500 was made to appellants to apply on the Moore contract.

It is contended by appellants that the contract with Moore gave him a maximum of five years within which to cut and remove the timber, but one-fifth was to be cut each year, and the land from which such timber was cut should be surrendered to the districts. If more time were required, the vendee had the right of an additional year by paying the state and county taxes "on the particular tracts which he elects to hold over."

Appellees contend that, the land being property of the districts, it is not subject to state and county taxes while so held; therefore, they urge, the taxpaying provision of the contract is unenforcible.

The court sustained demurrers to the complaint as to all allegations except one charging appellees with cutting unmerchantable timber. This appeal is from the chancellor's action in holding that as to the contractual matters pressed by appellants, the complaint did not state a cause of action.

It is well settled that where improvement districts acquire lands under authority given to foreclose better-

[2] The "Release of Lien" executed by appellants May 23, 1936, contained the following language: . . . "do hereby grant, sell, quit-claim and release unto the said J. H. Bailey" [here followed description of acreage], and then: "To have and to hold the same unto the said J. H. Bailey, and unto his heirs and assigns, with all the rights and privileges granted unto the said G. D. Moore in the original contract of sale and purchase hereinabove described."

ment liens, such districts hold in their governmental capacities; and, during such possession, state and county taxes are not assessable.[3] But the law is otherwise if the use made of the property after it has been acquired is other than that contemplated by the statute under which the district was created.[4]

*First.* Time within which the timber was to be removed was five years. But provisions in the contract for surrender of one-fifth of the acreage "each year to the vendors"; or, in the alternative, to exercise the option of procuring additional time not to exceed one year through payment of state and county taxes "due on the particular tracts," mean that the parties contemplated that one-fifth of the timber should be cut each year. Date of the contract was the time from which the privilege should run as to the first one-fifth. To procure additional time, payment of state and county taxes was requisite.

*Second.* While Bailey's contract contains language expressive of absolute release by the districts, there is a declaration that he, his heirs and assigns, shall hold "with all the rights and privileges granted unto the said G. D. Moore in the original contract of sale and purchase hereinabove described."

The construction placed upon Moore's contract attaches to Bailey.

Moore's partner was D. E. Benton. Moore and Benton sold timber to R. P. Moore and B. Johnson & Sons, but these transactions are not pertinent other than for the purpose of identifying the parties.

The construction we have given the contract seems to have been the one adopted by the parties, for in reply

[3] *Robinson* v. *Indiana & Arkansas Lumber & Mfg. Co.*, 128 Ark. 550, 194 S. W. 870; 3 A. L. R. 1426; *Kelley Trust Company* v. *Lundell Land & Lumber Co.*, 159 Ark. 218, 251 S. W. 680.

[4] Reference is again made to the opinion written by Mr. Justice HART in *Robinson* v. *Indiana & Arkansas Lumber Company*, where an exhaustive review of several cases was made and the distinction drawn between the status of *quasi*-corporations functioning as governmental agencies, and activities of such agencies serving in a proprietary capacity.

to a letter written to Moore by appellants' attorney,[5] there was a reply from Benton, on behalf of the partnership of Moore and Benton, stating that the taxes would be paid.[6]

In *Robinson* v. *Indiana & Arkansas Lumber & Mfg. Co.*, 128 Ark. 550, 194 S. W. 870, 3 A. L. R. 1426, Mr. Justice HART, after stating that the St. Francis Levee District was a *quasi*-corporation to which certain governmental powers had been delegated, said: "The correctness of the chancellor's holding depends upon whether the lands were acquired by the levee district in its proprietary capacity or in the exercise of its functions as a governmental agency. In the former case the lands would not be exempt and in the latter case they would be exempt, from taxation. The distinction, we think, has been recognized in our previous decisions relating to the question." It was then stated that [the lands] "were not held for any purpose of gain or as an income-producing property," and, therefore, the proprietary attributes did not attach.

By Act No. 146 of 1905,[7] timber sold as such, without conveyance of the land upon which it is grown, is taxable as personal property, and this is true whether such timber has been cut, or not. In the instant case the timber

[5] June 18, 1937, the attorney for appellants wrote G. D. Moore: "By reference to the contract of sale and purchase of timber between the districts and Mr. Moore, dated May 5, 1936, it appears that it is required of the purchaser to surrender one-fifth of the acreage each year or pay an additional sum equal to the state and county taxes. Accordingly, we will thank you to furnish us a correct description of the lands you wish to surrender, or else arrange to pay the required additional amount." [NOTE—This letter was addressed to G. D. Moore and D. E. Benton jointly].

[6] June 22, 1937, Mr. Benton wrote: "In reply to yours of recent date, we have decided to pay the state and county tax on the one-fifth of the timber that G. D. Moore purchased from Little Red River District. I will look after this in the near future." [The letter was written on stationery of Benton & Moore, "D. E. Benton, President; G. D. Moore, Secretary"].

[7] Act 146 of 1905 appears as § 13599 of Pope's Digest: "Hereafter all timber in this state which has been sold separately and apart from the land on which it stands shall be classed as personal property, and shall be subject to taxation as such. And the said timber interests shall be assessed and the taxes collected thereon in the county where said timber is located."

in question became personal property for purposes of taxation when the contract was signed in May, 1936.

## ON REHEARING

The improvement districts sold all the merchantable timber to Moore. The contract of sale required him to surrender one-fifth of the acreage each year, or as consideration for holding an additional year, to pay the state and county taxes due on each one-fifth so held over. With consent of the districts, Moore sold the oak timber to Bailey. Bailey received from the districts a release of all claims for any part of the purchase money remaining unpaid by Moore as against the oak timber. Thereafter the districts could enforce payment of unpaid purchase money due by Moore only against the timber other than oak. But the oak had been purchased by Bailey ". . . with all the rights and privileges granted unto the said G. D. Moore in the original contract of sale and purchase."

What *were* these rights and privileges? They included the right to cut and remove the timber within five years—one-fifth each year—and the land from which such one-fifth was annually cut should be surrendered to the districts. Additional cutting time was provided for, but this extension could be secured only by paying "the state and county taxes due" on the lands which otherwise would have reverted. No extensions beyond these times were given Bailey. The districts had only released, as against the oak timber, the right to enforce payment of the balance due on purchase price of all the timber. While the oak was fully paid for, the right to cut and remove it was referable to Moore's contract.

The contract to pay state and county taxes "due" upon election of the purchaser to hold the several one-fifths for an additional year was entered into under the mistaken belief that the districts would be required to pay such taxes, or that they would be cumulative charges against purchasers of the fee if and when the districts sold. Hence, the contract required the purchaser to pay the "state and county taxes due" upon any land which might have been, but which through election had not been, surrendered.

It is true the law provides that upon sale of timber it shall be classed as personal property and shall be subject to taxation as such.[8] But it does not appear that the timber was so assessed. When it shall be assesed the purchasers (because they are owners) must pay such taxes. But they must pay something more if they elect not to surrender a fifth of the land each year, as the original contract of sale provides.

It is also true, as appellees insist, that state and county taxes are not payable upon lands owned by the improvement districts which they acquired in consequence of sales for delinquent taxes. This is true because the districts hold the lands in their governmental capacities, and while so owned they are not subject to state and county taxes; nor are such taxes cumulative and chargeable to subsequent purchasers.

In view of the mutual mistakes of the parties as to the law governing payment of the state and county taxes, there was a failure of consideration for that part of the contract relating to extension of time for cutting the timber. But the contract is severable. The timber might have been cut one-fifth each year, without time grants. While the districts, had they not insisted upon collection of the tax equivalents, could not have been compelled to extend the time, they may not deny the privilege, in view of their insistence that the money be paid to them. Nor can the timber purchasers be required to make the payments. In the alternative, however, they should have the right to make the tender from time to time, and if they elect so to do, the districts will be required to accept.

There may be practical difficulties in determining what proportions of the tax equivalents should be paid by Bailey, who owns only the oak timber, and what parts should be paid by Moore, who owns the remainder; but this is a problem they must adjust.

The decree is reversed and the cause remanded, with directions to allow Moore and Bailey, or either of them, six months from the date of this opinion in which to pay the tax equivalents on so much of the land as was subject to the holdover privilege of the contract. It is so ordered.

---

[8] Pope's Digest, § 13599.