Crockett *v.* Bearden.

4-6447                                          156 S. W. 2d 79

Opinion delivered November 3, 1941.

*O. T. Ward,* for appellant.

*Kirsch & Cathey,* for appellee.

GRIFFIN SMITH, C. J.   The question for determination is whether appellant's deed from the state land commissioner vested in him title· to eighty acres, it being contended in avoidance of the deed that the collector for Greene county was without power to sell in 1934 for delinquent taxes of 1933.

There is argument that improper descriptions in commissioners' deeds affected certain transactions. It is our view, however, that the agreed statement is conclusive of the proposition that the west half of the northeast quarter of section twenty, township eighteen north, range eight east, is in Greene county. Other facts agreed to in the statement conclude incidental contentions.

In 1927 The Vail-Donaldson Company acquired title to lands lying within the territorial area of St. Francis Drainage District of Clay and Greene counties and its Subsidiary District No. 11. Default having been made by Vail-Donaldson in payment of betterment installments due in 1928 and 1929, the district and its subsidiary instituted foreclosure proceedings. April 7, 1930, the court rendered its decree. Sales were effectuated July 12, 1930, and on November 3, 1930, there was confirmation. January 26, 1931, the commissioner conveyed "said lands" to the district. The deeds were approved in open court. The descriptions "NW NE [and] SW NE, section twenty, township eighteen range eight" comprised the acreage in controversy. Neither the deeds nor the order of approval contains express language declaring the property to be in Greene county.

These lands were delinquent for state and county taxes assessed in 1929. At the collector's sale in 1930 the state purchased. The county clerk made certification to the land commissioner June 22, 1932. December 4, 1933, the drainage districts redeemed.

October 16, 1936, for a consideration of $15,650.83, the districts conveyed certain lands to Vail-Donaldson, including the eighty acres here discussed. During the preceding August, however, Vail-Donaldson executed a quitclaim deed to Ollie Bearden in consideration of $1,491.77. Total acreage covered by the deed was 122.50. The agreed statement is that the description "comprehends the lands involved in this litigation." July 1, 1940, Vail-Donaldson executed an additional deed to appellee covering the same lands.

November 7, 1938, the state land commissioner, for $80 plus cost of deed, sold the west half of the northeast

quarter, etc., to appellant. The deed contains a recital that the eighty acres forfeited because of nonpayment of taxes for 1933. In April, 1938, the Greene chancery court confirmed the state's title to certain lands, under authority of Act 119 of 1935. The west half of the northeast quarter was included in the proceedings.

The county clerk's certificate to the state land commissioner relative to the delinquency for 1933 and sale to the state in 1934 is dated January 19, 1937. How the property got back on the tax books after the 1930 sale to the state is not shown. J. Sam Thompson, county clerk, testified regarding the records. Entries of assessment for 1932 had been marked through with a pencil, indicating that the collector was not to be charged. The tax book for 1933 was exhibited to the clerk. Entries showed that ownership of the east half of section twenty, township eighteen north, range eight east, was unknown. The question was asked (to which there was a negative answer): "Was the collector charged for that year for anything as to that land?"

When the clerk certified the 1930 forfeiture, title, *prima facie,* vested in the state. Pope's Digest, § 13876. After the collector's sale and prior to certification, the owner had a right to redeem through the county clerk and county treasurer. Pope's Digest, § 13864, *et seq.*

Duties of the assessor are set out in § 13676 of Pope's Digest, one of the requirements being that, in each even numbered year after 1930, such assessor shall, prior to the third Monday in August, file with the county clerk a report of assessments of real property situated outside the boundaries of any city or town. The assessor's duty to return all property is not affected by the fact that particular lands may have been sold to the state; but when the assessor makes his report to the county clerk, the latter (although he lists such property, giving descriptions, and the name of the owner, if known) does not extend the assessment or charge the collector with the amount which would have been due but for prior forfeiture. The assessor's report, as distinguished from duties ascribed to the clerk, is in the nature of a conditional

assessment—a transaction to be consummated only when the property is in private ownership.

By whatever process the lands were listed on the collector's books for 1933 taxation, the result is that from 1930, when the sale was had, until June 22, 1932, when the clerk certified to the land commissioner, there was no right of resale; and from June 22, 1932, until December 4, 1933, the state held title—a status which deprived the collector of power to sell. It follows that appellant acquired no title by reason of his purchase in 1938. Confirmation did not cure a sale that could not be made.

It was decided in *Robinson* v. *Indiana & Arkansas Lumber Co.,* 138 Ark. 550, 194 S. W. 870, 3 A. L. R. 1426, that lands sold to St. Francis Levee District for nonpayment of taxes were acquired by the district in the exercise of governmental functions, and that during the interval between purchase and sale such lands were not subject to taxation for state and county purposes. Although language of the Robinson case applied only to St. Francis Levee District, the principle announced was broadened when the court, in *Kelley Trust Company* v. *Lundell Land & Lumber Co.,* 159 Ark. 218, 251 S. W. 680, said: "It was held [in the Robinson case] that land in the hands of a levee district is exempt from taxation for state and county purposes." To the same effect is the more recent case of *Little Red River Levee District No. 2* v. *Moore,* 197 Ark. 945, 126 S. W. 2d 605.

In support of the contention that the drainage districts were not owners of the land, appellant says: "If the deeds give no location of the lands, either by townships and range, as to north or south, east or west, no location as to county or state, then the [commissioner's] report of sale does not have a description by which the lands may be located, [and] we cannot see how a court can, with any conscience, uphold a sale thereunder." It is further said: "We defy any living human to point out the words in either the deed or the report of sale the location of the lands, or any lands described therein."

Attention is directed to *Kunze* v. *Blackwood,* 195 Ark. 658, 113 S. W. 2d 705, also to *Pope* v. *Shannon Bros.,*

*Inc.,* 195 Ark. 770, 114 S. W. 2d 1. If express language of identification is lacking in the deeds, or in the reports of sales, the agreed statement quite effectively shows that the proceedings were in Greene chancery court. The court exercised jurisdiction in respect of the lands, which it could not have done had the subject-matter been in a different county; hence, the presumption attaches that the lands were in Greene county. The *res* is identified throughout as being in township eighteen, range eight. The court takes judicial notice that these lands can only be in Greene county; that they are north of the base line, and east of the fifth principal meridian.

Affirmed.