CENTRAL CLAY DRAINAGE DISTRICT *v.* RABORN.

4-6554                                            157 S. W. 2d 505

Opinion delivered January 12, 1942.

*Verlin E. Upton* and *E. G. Ward,* for appellant.

*Arthur Sneed,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a decree awarding forty acres to W. R. Raborn, who sued Central Clay Drainage District. The district claims title under a

decree of February, 1932, by which liens for 1930 were foreclosed. Deed of O. C. Grider, commissioner, was approved in November, 1932.

Raborn imputes fraud to the district, contending that betterments apportionable to 1930 had been paid. The court, it was alleged, was deceived when the decree was procured.

Transactions by which appellee claims to have acquired title are these: The land became delinquent in 1934 for 1933 state and county taxes.[1] Not having been privately purchased at the collector's sale, it was certified as state-acquired; and in December, 1936, the county clerk made his certificate to the commissioner at Little Rock. In April, 1938, state's title was confirmed.[2] Act 119 of 1935. The land commissioner issued his deed in favor of Raborn in February, 1940.

In an amendment to his complaint, appellee alleged that the land forfeited for delinquent state and county taxes assessed for 1930, and that J. P. Sherrill, record owner, redeemed in December, 1933, under provisions of Act 2, approved August 18, 1933; therefore, it is argued, title was in the state when the drainage district foreclosed its lien, and the district could not acquire title.

Two propositions are determinative of the litigation: (1) Was fraud practiced upon the court by the drainage district? (2) Was title in the state because 1930 taxes were not paid?

In urging the first question, appellee relies upon tax records of the drainage district available in the office of the county clerk—records, he says, which were made at the instance of the commissioners,[3] "upon which the public had a right to rely."[4]

---

[1] It was assessed in the name of J. P. Sherrill as the southwest quarter of the northeast quarter of section three, township twenty north, range six east.

[2] The drainage district did not intervene in the state's confirmation suit.

[3] The district was created by Act 317, approved May 29, 1911. The governing body is referred to as a board of directors.

[4] The transcript page showing how the record relied upon was brought to the trial court's attention is not cited in appellee's brief.

It now appears that the payment around which the controversy revolves was evidenced by County Collector Geo. A. McNiel's receipt No. 3,333 for $32.31. Of this amount $25.60 was for ''Central Clay Ditch.'' The receipt is dated May 9, 1930, and recites: ''Taxes for the year 1929 upon the property herein described as charged upon the tax books.''

After disclaiming knowledge in respect of the receipt, ''or where it could be found,'' appellee says he was under the impression that drainage taxes for 1930 were collectible the same year. The decree of February 1, 1932, recites that the suit was ''. . . to foreclose and enforce the assessments . . . for 1930.'' Another finding is: ''. . . the collector has returned and reported [the southwest quarter of the northeast quarter] . . . for the year 1930 delinquent.'' The decree refers to ''the complaint with its exhibits,'' but does not identify the exhibits, nor have they been abstracted.

Collector McNiel testified that betterments were collected following the year in which the assessment was apportionable, and that receipt No. 3,333 evidenced payment for 1929. On cross-examination the witness identified a list of delinquents. It was certified to him by the commissioners, and was for 1929. He said ''. . . confusion arose in the matter of collecting taxes for Central Clay Drainage District. No book was made for 1929: it was made in 1930, but was for the 1929 taxes. The book was actually delivered to me January 1, 1930.''

B. O. Dalton, county clerk, identified receipt No. 3,333, and testified: ''It shows it was issued May 9, 1930, in payment of 1929 taxes on the lands involved herein.''

It is anomalous that appellant and appellee rely upon the same receipt. Appellant thinks it is conclusive of the contention that betterments for 1929 were paid May 9, 1930, and insists there is no evidence contradicting recitals in the decree that the 1930 installment was delinquent.

McNiel's testimony, and the receipt, clearly show that the payment of $25.60 was applicable to 1929, and the charge of fraud fails. The decree, therefore, stands

unimpeached; and it follows as a matter of law that title to the land vested in the district.

As to the second question, appellee correctly asserts that Sherrill permitted the forty acres to forfeit for non-payment of 1930 state and county taxes. But this default was not certified to the land commissioner. Section 3 of Act 2 of the Extraordinary Session of August, 1933, contains the provision that ''If, for any reason whatsoever, [forfeiture to the state] has not been certified to the state land commissioner, redemption may be made at any time before January 1, 1934, from the county clerk. . . .''

While at a sale of lands upon which state and county taxes have not been paid the collector acts for the state where there are no acceptable private bids,[5] the purchase is conditional. The transaction is consummated in so far as acquirement of title is concerned when the clerk causes the certified list to be registered. Pope's Digest, § 13876. The statute provides that after registration, the clerk shall immediately transmit such certificate to the state land commissioner. *Page* v. *McCuing,* 201 Ark. 890, 148 S. W. 2d 308.

In the instant case title absolute was not acquired by the state. Sherrill redeemed while the privilege was his. This is not a controversy between the state and the district over superior rights growing out of the two forfeitures of 1930.[6] Since appellee claims title through purchase from the state under forfeiture for 1933 taxes, his position is untenable. At that time title was in the district, and the state did not have the right to sell. The district was exercising a governmental function. *Robinson* v. *Indiana & Arkansas Lumber Co.,* 128 Ark. 550, 194 S. W. 870,[7] 3 A. L. R. 1426.

The decree is reversed, and the cause is remanded with directions to dismiss the complaint.

---

[5] A bid is not acceptable if it is for less than taxes, penalty, and cost, etc. See Pope's Digest, § 13849.

[6] One forfeiture was to the state, the other to the district.

[7] See, also, *Crockett* v. *Bearden, ante,* p. 48, 156 S. W. 2d 79.