MISSOURI PACIFIC HOSPITAL ASSOCIATION
*v.* PULASKI COUNTY.

4-8031                                              199 S. W. 2d 329

Opinion delivered January 27, 1947.

*Henry Donham,* for appellant.

*John M. Rose,* for appellee.

ED F. McFADDIN, Justice.   The question for decision is whether the property of the appellant, Missouri Pacific Hospital Association, is exempt from taxation.   The appellees are Pulaski County, the City of Little Rock, the Little Rock Special School District, and John M. Rose, as a property owner in Pulaski county.   The status of the appellant, and the use of its property will be discussed subsequently.

10

Appellees filed petition with the Arkansas Public Service Commission to have the property of the appellant placed on the assessment roll for *ad valorem* taxes. The Public Service Commission, after hearing evidence, made the order sought by the appellees, and rendered a written opinion that has proved helpful to this court. The Pulaski Circuit Court affirmed the order of the Public Service Commission; and the appellant has appealed, presenting the points herein listed.

I. *Is the Appellant's Property "Used Exclusively for Public Charity," and Therefore Exempt?* The answer to this question depends on the use of the appellant's property measured to the applicable constitutional provisions. Article XVI, § 5 of the Arkansas Constitution says, in part:

" . . . the following property shall be exempt from taxation: . . . buildings and grounds and materials used exclusively for public charity."

Article XVI, § 6 of the Constitution says:

"All laws exempting property from taxation other than as provided in this Constitution shall be void."

Some of our cases construing the constitutional language "used exclusively for public charity" are: *Brodie v. Fitzgerald,* 57 Ark. 445, 22 S. W. 29; *Hot Springs School District v. Sisters of Mercy,* 84 Ark. 497, 106 S. W. 954; *Grand Lodge F. & A. M.* v. *Taylor,* 146 Ark. 316, 226 S. W. 129; *School District of Ft. Smith* v. *Howe,* 62 Ark. 481, 37 S. W. 717; and *Robinson* v. *Indiana & Arkansas Lumber Co.,* 128 Ark. 550, 194 S. W. 870, 3 A. L. R. 1426. These cases afford the guide to a decision in the present case.

Acting under Art. XVI, § 5 of the Constitution, the Legislature, by Act No. 114 of 1883 (now found in § 13603, Pope's Digest) provided:

"All property described in this section, to the extent herein limited, shall be exempt from taxation . . .

"Seventh. All buildings belonging to institutions of purely public charity, together with the land actually

occupied by such institutions, not leased or otherwise used with a view to profit, and all monies and credits appropriated solely to sustaining and belonging exclusively to such institutions.''

This subdivision has been several times before this court; but, as pointed out in *Brodie* v. *Fitzgerald, supra,* the right of exemption must be found in the Constitution rather than in the statute, since Art. XVI, § 6 so provides.

Appellant claims that its property is exempt as coming within the last clause of Art. XVI, § 5, *supra,* that is:

"All buildings and grounds and materials used exclusively for public charity.''

We proceed, therefore, to determine whether the use made of appellant's property is "exclusively for public charity''; and these facts appear to be admitted: (1) Appellant is a benefit association organized under the laws of Missouri, and composed of the employees of the Missouri Pacific Railroad Company and the Missouri Pacific Transportation Company. (2) Appellant owns the hospital in Little Rock; and the employees of the railroad and transportation companies support the hospital by contributions from their wages and salaries each month; and these employees have absolute and exclusive control over the hospital, which is open to retired employees of these companies, and also to members of the families of the employees. (3) The hospital is principally open only to these people; but, in addition, the hospital receives some people who become sick or are injured on the property of the railroad or transportation company. (4) The hospital does not "go out and take in the public generally that might come in and ask for admission.'' (5) As previously stated, the hospital is supported by assessments made on the wages and salaries of employees. (6) These assessments are fixed by the Board of Trustees of the hospital, based on a scale depending on the amount of wages of each employee. (7) The assessments are made to meet the requirements of the

hospital; and, in the event that the hospital accumulates a surplus, the assessments are reduced or temporarily suspended.

The above admitted facts, as to the use and financing of the appellant's property, show that the property is not used "exclusively for public charity" within the rule announced in *Hot Springs School District* v. *Sisters of Mercy, supra*. In the reported case this court (speaking through Mr. Justice Hart) held the following to be *some* of the essentials existing in that case, and to be necessary to allow exemption of the property as "used exclusively for public charity":

A. The institution was open to any worthy sick person regardless of ability to pay.

B. No funds were diverted from the institution. Whatever profit was realized from those who paid went to the benefit of those who could not pay, to extend and enlarge the charity of the hospital.

Neither of these two essentials is present in the case at bar. The appellant's hospital is not open to "any worthy sick person"; it is open only to Missouri Pacific employees, their families, and persons who may become sick or be injured on Missouri Pacific property. Furthermore, if the hospital accumulates a surplus, then such is returned to the members by reducing or temporarily suspending assessments. In short, the proof here shows that the appellant's hospital is not used "exclusively for public charity"; and the use is the determining factor. As stated by Chief Justice McCulloch in *Grand Lodge* v. *Taylor, supra*: "This language of the exemption clause refers, not to the character of the corporation or association owning the property sought to be exempted, but, regardless of the character of the owner, to the direct and exclusive use of the property for public charity."

In 51 Am. Juris., 606, *et seq.*, there is an exhaustive discussion of hospitals as exempt from taxation. In 61 C. J. 500, *et seq.*, this matter is also discussed. Of course, the decision in any state depends, to a large extent, on

the wording of the constitutional provision in such state. Our Constitution limits the exemption to property "used exclusively for public charity"; and is much more restrictive than provisions in the constitutions of some other states. The wording of the restriction determines the distinction in some of the cases, as is pointed out in Annotations and cases cited in 51 Am. Juris., 606, *et seq.,* from which we quote a part of the text:

"Hospitals as such enjoy no inherent exemption from taxation, and their property is taxable except so far as exempted by constitutional provisions or legislative enactments. . . . Hospitals claiming exemption have the burden of showing that they clearly come within the terms of the exemption enactments. . . . Where the benefits of a hospital are restricted to a special class, the rules of law generally pertaining to such situations in the case of charitable institutions govern. So, a hospital to which the general public has no legal right of entry, and from which it may be excluded at the discretion of the managers, is not entitled to exemption from taxation as a purely public charity. A hospital maintained by a corporation created for the purpose of maintaining it for the benefit of employees of a railroad company, and used for treatment solely of members of an association composed entirely of such employees, is not for strictly charitable purposes within the meaning of a constitutional tax exemption."

To sustain the last-quoted sentence, there is cited the case of *Chaffee County* v. *D. & R. G. R. Co. Employees' Relief Assn.,* 70 Colo. 592, 203 Pac. 850, 22 A. L. R. 902. In that case the Supreme Court of Colorado held that the hospital, very much like the one in the case at bar, was not exempt from taxation, since its property was not "used solely and exclusively for strictly charitable purposes." The constitutional provision in Colorado concerning exemption is very similar to ours, and the hospital association in the Colorado case is very similar to the hospital association in the case at bar.

A most enlightening case, construing our own constitutional provision as applied to a hospital operated

14

for benefit of railway employees, is the case of *S. L. S. W. Ry. Co.* v. *Yates,* 23 Fed. 2d 283. In that case the U. S. Circuit Court of Appeals of the 8th Circuit decided that a hospital in Texarkana, Arkansas, was not exempt from taxation. The court said:

"Funds to support the institution are to be obtained by assessments, based on a wage-earning scale, collected monthly from the employees. There are other provisions which emphasize those above quoted or outlined but sufficient has been said to show the general plan of the trust to be that the use of the property is confined to the employees (and their dependents) of appellant and its affiliated lines. The public in general, nor any part thereof, nor any indefinite class have any right to any use in this property and it is in no wise supported by any charitable gifts or donations, but only by the direct beneficiaries thereof and by contributions, in the form of loans, from the railways whose employees are protected. In short, it is simply the familiar plan of a hazardous business providing hospital and medical services for those engaged therein. It seems to us that this is clearly not a usage 'exclusively for public charity.' We base the above conclusion on an independent construction of this provision of the Arkansas Constitution. However, there are certain Arkansas Supreme Court decisions which tend to support, if they do not compel the same conclusion. Those are *Hot Springs School Dist.* v. *Sisters of Mercy,* 84 Ark. 497, 106 S. W. 954; *McDonald* v. *Shaw,* 81 Ark. 235, 242, 98 S. W. 952; *Fordyce* v. *Woman's Christian National Library Association,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485. In all of these cases that court has held that to constitute a public charity within the meaning of this constitutional provision, the trust must be for the benefit of an indefinite class of persons. Another case, *Arkansas Midland R. Co.* v. *Pearson,* 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317, seems closely analogous, if not directly in point."

There are many cases on the question here at issue. Some cases support the views already expressed; and some are to the contrary. We make no effort to list all

such cases, nor to distinguish and discuss those apparently or actually holding to the contrary. It is sufficient to say that we reach the conclusion, in line with the cases and authorities we have cited, that the appellant's property is not "used exclusively for public charity," and is, therefore, not entitled to tax exemption under our constitutional provsion.

II. *Act 40 of 1931.* The appellant relies most strongly on this act as granting the exemption from taxation. This act, which may be found in § 13587, Pope's Digest, reads:

"All corporations or institutions heretofore or hereafter organized, created and operated as a hospital for the purpose of treating the members of said organization and others, not leased or otherwise used with a view of profit, are hereby declared to be institutions of public charity and shall be free from taxation."

But the vice of the appellant's argument in reliance on this act lies in the unconstitutionality of the act as applied to the facts in this case. Art. XVI, § 5 of the Constitution provides what property is exempt from taxation; Art. XVI, § 6, as previously quoted, says:

"All laws exempting property from taxation other than as provided in this Constitution shall be void."

When we hold, as we did in section I, *supra,* that the appellant's property was not "used exclusively for public charity," then Art. XVI, § 6 of the Constitution strikes down any legislative attempt to grant appellant any exemption from taxation. In *Supreme Lodge* v. *Board of Review,* 223 Ill. 54, 79 N. E. 23, 7 Ann. Cas. 38, the Supreme Court of Illinois struck down a legislative enactment which allowed a tax exemption broader than the constitutional provision. That is what we are obliged to do here. What was said in *Brodie* v. *Fitzgerald, supra,* is not only apropos; but is ruling:

"Section 6 provides that 'All laws exempting property from taxation other than as provided in this Constitution shall be void.' It follows that if this property

is not exempt from taxation under the Constitution, it cannot be exempt under any act of the General Assembly, as the section last quoted is a limitation upon the power of the Legislature to exempt property from taxation."

We, therefore, conclude that Act 40 of 1931 is unconstitutional insofar as it attempts to grant tax exemption to property not exempt under Art. XVI, § 5 of the Constitution; and for that reason does not support the appellant in the case at bar.

III. *Res Judicata*. Finally, appellant cites orders of the Pulaski County Court made in 1925 and 1931, and an order of the Arkansas Tax Commission made in 1929, each declaring appellant's property to be exempt from taxation; and appellant claims that these orders render *res judicata* any and all questions as to taxability of appellant's property in the present proceedings.

Against this plea, the appellees offer several defenses, some of which are: (1) administrative rulings are never *res judicata;* (2) there was no identity of parties as between any of the previous proceedings and the case at bar. We find it unnecessary to discuss or decide these contentions, because we hold that a judgment rendered in one year, holding property to be exempt from taxes because "used exclusively for public charity," is not *res judicata* regarding the taxes on the property for a subsequent year. The great weight of authority is to the effect that an adjudication upon liability for taxes of one year is no bar to an action for taxes for a subsequent year. In *Keokuk & W. R. Co.* v. *Missouri,* 152 U. S. 301, 38 L. Ed. 450, 14 S. Ct. 592, the U. S. Supreme Court said: "A suit for taxes for one year is no bar to a suit for taxes for another year. The two suits are distinct and separate causes of action."

In *City of Newport* v. *Commonwealth,* 106 Ky. 434, 50 S. W. 845, 51 S. W. 433, 45 L. R. A. 518, the Kentucky Court of Appeals said: "An adjudication upon a liability for taxes for one year is no bar to an action for taxes for a subsequent year."

In *Bank* v. *City of Memphis,* 101 Tenn. 154, 46 S. W. 557 the Tennessee Supreme Court said: "The plea of *res adjudicata* is limited in its effect, in tax cases, to the taxes actually in litigation, and is not conclusive in respect to other taxes assessed for other and subsequent years."

In *Lakeshore Ry. Co.* v. *People,* 46 Mich. 193, 9 N. W. 249 the Supreme Court of Michigan said: "The result of a suit for taxes of a particular year is not *res judicata* in subsequent suits between the same parties for taxes of other years, and the decisions upon legal questions arising in the first case are important only as precedents."

To the same effect see *Chicago R. Co.* v. *Cass County,* 72 Neb. 489, 101 N. W. 11, 117 A. S. R. 806; *City of Davenport* v. *C. R. I. & P. R. Co.,* 38 Iowa 633; *Shreveport Creosting Co.* v. *Shreveport,* 119 La. 637, 44 So. 325; and *State* v. *Brotherhood of R. Trainmen,* 74 O. App. 263, 54 N. E. 2d 320. See, also, 34 C. J. 966.

We, therefore, hold that the appellant's plea of *res judicata* is without merit.

The judgment of the Circuit Court is in all things affirmed.

Holt, J. (dissenting). I cannot agree with the view of the majority in this case.

Article XVI, § 5 of the Constitution of the State of Arkansas provides: "All property subject to taxation shall be taxed according to its value . . . provided that the following property shall be exempt from taxation: Public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity." Section 6 reads: "All laws exempting property from taxation other than as provided in this Constitution shall be void."

Obviously § 5 was not self executing and an enabling act of the Legislature was necessary to make it effective and to define or classify the different species of property which the Constitution exempted from taxation. To this end, the Legislature of 1883 passed an act (now § 13603 of Pope's Digest), exempting the following property from taxation: "First. All public schoolhouses, etc. Second. All public colleges, academies, etc. Third. All lands used exclusively as graveyards, etc. Fourth. All property, whether real or personal, belonging exclusively to this State or the United States. Fifth. All buildings, belonging to counties used for holding courts, for jails or for county offices, etc. Sixth. All lands, houses and other buildings belonging to any county, city or town used exclusively for the accommodation of the poor. Seventh. All buildings belonging to institutions of purely public charity, etc. Eighth. All fire engines and other implements used for the extinguishment of fires, with the buildings, etc. Ninth. All markethouses, public squares, other public grounds, town and city houses or halls, etc." There was no attempt by the Legislature, by this act, to exhaust all of its powers under Art. XVI of the Constitution, *supra.*

By Act No. 40, the Legislature of 1931 further exercised its powers under Art. XVI. The title of that act was "An Act to Declare Certain Institutions Used for Hospital Purposes to be Purely Public Charity." Section 1 of the Act provides: "All corporations or institutions heretofore or hereafter organized, created and operated as a hospital for the purpose of treating the members of said organization and others, not leased or otherwise used with a view of profit, are hereby declared to be institutions of public charity and shall be free from taxation." Section 2 repealed all laws and parts of laws in conflict.

This act has been in effect for more than fifteen years and recognized and followed by all tax assessing agencies, resulting in appellant's property not being taxed during this period.

It will be observed that the exempting provision of the Constitution, *supra,* did not attempt to define "public property," "public purposes," "churches," "cemeteries," "school buildings and apparatus," "libraries and grounds," or "public charity," so as I view it, the present case presents this question: "Can the Legislature within reasonable limitations find and declare as the public policy of this State what constitutes public charity and what type of institutions shall be declared institutions of public charity?" I think it has that power.

Certainly, the Legislature of this State has the power to, and does, declare the State's public policy and when, as here, it has by legislation declared the State's policy to be that all corporations or institutions coming within the provisions of Act No. 40, *supra,* "are hereby declared to be institutions of public charity and shall be free from taxation," it was, it seems to me, acting within its powers and this court would not be warranted in striking down this legislation as being in contravention of the Constitution.

There is no contention that appellant does not come within the provisions of Act No. 40, but it is insisted that the act is unconstitutional.

In considering this question, there are certain well established rules of construction to guide us. This court in *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9, said: "First, that the Constitution of this State is not a grant of enumerated powers to the Legislature, not an enabling, but a restraining act (*Straub* v. *Gordon,* 27 Ark. 625), and that the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the State of Arkansas. (Citing cases.) In other words, as was said in *McClure* v. *Topf & Wright,* 112 Ark. 342, 166 S. W. 174: 'It is not to be doubted that the Legislature has the power to make the written laws of the State, unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so

declare it.' Second, that an act of the Legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the Constitution; and further, that all doubt on the question must be resolved in favor of the act. (Citing cases.) In *Standard Oil Co. of La.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, this court quoted the language of the Supreme Court of the U. S. in *Hooper* v. *California,* 155 U. S. 48, 15 S. Ct. 207, 39 L. Ed. 297, that 'the elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality.' "

In *McEachin* v. *Martin,* 193 Ark. 787, 102 S. W. 2d 864, it was said: " . . . the well established rule of construction should be kept in mind that legislation will not be declared unconstitutional unless obviously so, and that all reasonable doubt upon the subject must be resolved in favor of the constitutionality of the legislation."

In *Alaska Steamship Co.* v. *United States,* 290 U. S. 256, 54 S. Ct. 159, 78 L. Ed. 203, the Supreme Court said: "Courts are slow to disturb the settled administrative construction of a statute long and consistently adhered to."

In *Moore* v. *Alexander,* 85 Ark. 171, 107 S. W. 695, this court said: "The general rule is that the acts of the General Assembly are valid unless in conflict with some express provision of the State or Federal Constitution, and it will not do to say that the act is contrary to the spirit of the Constitution, but the clause must be indicated and the repugnancy between it and the act apparent before the courts are justified in pronouncing the act null. 1 Lewis's Sutherland, Stat. Con. (2d Ed.), § 85."

A case which appears to be directly in point is that of *State ex rel.* v. *Packard et al.,* 35 N. D. 298, 160 N. W. 150, L. R. A. 1917B 710. There, four Masonic institutions sought to prevent the Tax Assessor and State Tax Commission from listing and assessing their properties for taxation, claiming exemption under the laws of North Dakota. The Constitution of that State provided:

"Laws shall be passed taxing by uniform rule all property according to its true value in money, but the property of the United States and the State, County and municipal corporations, both real and personal, shall be exempt from taxation, and the legislative assembly shall by general law exempt from taxation property used *exclusively for school, religious, cemetery or charitable purposes.*"

Pursuant to this mandate, the North Dakota Legislature passed a law exempting "all buildings belonging to institutions of public charity" from taxation. In 1901, the exemption statute was amended to exempt from taxation "the personal and real property owned by charitable associations known as posts, lodges, chapters, councils, commanderies, consistories, and like organizations and associations not organized for profit, grand or subordinate, and used by them as places of meeting and to conduct their business and ceremonies; provided, however, that such property is used exclusively for such charitable purposes."

In upholding these statutes and sustaining the contention of certain Masonic bodies that their property was exempt from taxation the court, among other things, said: "But if the meaning of the statute be deemed doubtful, we are reminded that the foregoing provisions have remained a part of the statute law of this State since 1901 (decision 1916) although subsequent Legislatures have made certain changes in the law designating the property declared to be exempt from taxation. . . . The provision therefore has remained a part of the statute law of this State for fifteen years. During this time it has not only been treated as valid by the various administrative officers and boards but has received the approval of three different legislative assemblies and three different Governors. . . . The contemporaneous construction placed thereon by the various administrative officers and boards is entitled to great weight, and the acquiescence in and approval of such construction by subsequent legislative assemblies and

chief executives ought to dispel all possible doubt as to the legislative intent. The State Tax Commission, however, contends that the Masonic bodies are not charitable associations and that property used for their places of meeting and to conduct their business and ceremonies is not used for charitable purposes; that it was beyond the constitutional power of the Legislature to so declare, and that consequently the provision under consideration is unconstitutional. . . . It is unnecessary for us, however, in this case to determine whether a Masonic lodge is a charitable organization. The Legislature has determined this question and in positive and unequivocal terms declared that the several Masonic bodies are charitable organizations and that their property when used for the purposes specified in the statute is used for charitable purposes and as such exempt from taxation. We are not called upon, nor is it our function, to review the correctness of this legislative determination. For it must be presumed that the Legislature had before it when the statute was passed any evidence that was required to enable it to act; and the passage of the statute must be deemed a finding by the Legislature of the existence of the facts justifying the enactment thereof. We have no power to supervise the acts of the Legislature or substitute our judgment for its judgment upon any matter within the scope of its constitutional powers. Our authority is limited to an inquiry into and a determination of whether the Legislature has exceeded its constitutional powers and has arbitrarily classified property as entitled to exemption from taxation on the ground that it was used for charitable purposes, when clearly and unquestionably the property sought to be exempted is not within the class which the Legislature has declared it to be.

"Every reasonable presumption is in favor of the constitutionality of a legislative enactment, as it is presumed that the Legislature acted within its constitutional powers and enacted a valid law. This presumption is conclusive unless it is clearly shown that the enactment is prohibited by the State or Federal Constitution. The primary duty of the courts is to construe statutes with

reference to the Constitution and it is only when a statute clearly violates the provisions of the Constitution that the courts may declare the statute to be unconstitutional. . . .

"No attempt was made to define charitable purposes in the State Constitution, or to determine what organizations or institutions would be entitled to the benefit of the exemption which the Constitution directed the Legislature to put into effect. Nothing was said to indicate any intent to exclude secret or fraternal societies from the benefit of such exemption or (as in some States) to restrict such exemption to property devoted purely and exclusively to the purposes of public charity. . . . The legislative construction and determination as we have already stated was in harmony with the weight of judicial authority in this country, and in our opinion we have no right to say that the Legislature exceeded its constitutional authority in enacting the statute under consideration."

I have quoted somewhat at length from this North Dakota case for the reasoning appears to me most logical and sound. See *Gay et al.* v. *State et al.*, 228 Ala. 253, 153 So. 767.

In the present case, not only has appellant's property been declared exempt by all taxing agencies in this state for more than fifteen years, but at least seven Legislatures have met and adjourned without further action, and certainly it appears to me that some action on the part of the Legislature would have been taken had there been any doubt about the meaning and validity of Act No. 40, *supra*. The presumption of the act's validity as pointed out in the above authorities is fortified by acquiescence continued through the years, until it has become a rule of property.

In *Union Pacific Ry. Co.* v. *Artist*, 60 Fed. 365, (C. C. A. 8 Circuit—opinion by Judge SANBORNE), 23 L. R. A. 581, it was held: "A hospital maintained by a railroad for free treatment of its employees, supported partly by monthly contribution of all its employees and partly by

the company, and not maintained for profit, is a charitable institution.''

I think that the definition of ''public charity'' being promulgated in the majority opinion is a narrow and impracticable one. The majority is, in effect, saying that unless a charitable institution is open alike to all members of the public it is not such a public charity as to be exempt from taxation. Merely to give examples of what would flow from such a rule is to show its utter unsoundness. A home built and operated under an endowment that provided that it should be a haven for white orphan children of Pulaski county would not, under the majority's rule, be exempt from taxation, because it was not open to children of the Negro race or children from outside Pulaski county. Instances of the absurdities to which the narrow construction being given the word ''public'' by the majority could be multiplied, but I think the one given is sufficient to show that the majority's pronouncement that a charity must be available to all members of the public, in order to come within the constitutional exemption, is an unreasonable one.

The case of *S. L. S. W. Ry. Co.* v. *Yates,* 23 Fed. 2d 283, relied upon by the majority is, as I view it, not controlling here for the reason that that case was decided approximately four years before Act No. 40, *supra,* was enacted.

For the above reasons, I think the judgment should be reversed and the cause remanded with directions. Mr. Justice McHaney and Mr. Justice Robins concur.