Benny GONZALES, *et al. v.* CITY of DeWITT

03-936                                              159 S.W.3d 298

Supreme Court of Arkansas
Opinion delivered April 15, 2004

*Montgomery, Adams & Wyatt, PLC*, by: *Orin Eddy Montgomery*, for appellants.

*Harrill & Sutter, P.L.L.C.*, by: *L. Oneal Sutter*, for appellee.

DONALD L. CORBIN, Justice. In the present appeal, we are asked to construe the provisions of the Arkansas Local Police and Fire Retirement System ("LOPFI"), codified at Ark. Code Ann. §§ 24-10-101—709 (Repl. 2002 and Supp. 2003). At issue is whether the trial court erred in granting Appellee City of DeWitt's motion for summary judgment after determining that the city was not

in violation of LOPFI. This case was certified to us from the Arkansas Court of Appeals, as involving an issue of first impression; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). Because there remains a material issue of fact to be decided, we reverse and remand this matter to the trial court.

This case centers on a dispute over the retirement plan provided by the City of DeWitt to Appellants, who are police officers for the city.[1] The record indicates that in 1973 the city council of DeWitt adopted Ordinance No. 291, thereby establishing a retirement plan for eligible employees of the police department. By 1977, however, there were only two eligible police officers covered under the plan, so the city council voted to drop the plan. The two officers covered under the previous plan were then transferred to a plan administered by New York Life Insurance Company. Thereafter, the city council continued to discuss the establishment of a retirement plan for city employees. The city council was advised that it could vote to participate in LOPFI, and it was also advised on retirement plans offered through Pan American Life and Modern Woodmen of America.

On September 12, 1989, after considering the options presented to it, the city council voted to adopt a retirement plan for all city employees through Pan American Life. This retirement plan was titled the "City of DeWitt, Arkansas Employees' Retirement Plan" and became effective on January 1, 1990.

On June 9, 1999, Appellants filed a complaint in the Arkansas County Circuit Court, alleging that the City of DeWitt's action of providing retirement benefits through Pan American Life violated the provisions of LOPFI. The city moved for summary judgment, arguing that there were no material issues of fact to be decided, as the provisions of LOPFI do not require mandatory participation. A hearing on the city's motion for summary judgment was held on April 2, 2003. During this hearing each side simply argued the issues already set forth in their briefs regarding summary judgment.

The trial court entered a written opinion, dated April 28, 2003, granting the city's motion for summary judgment. In so ruling, the trial court concluded that the retirement plan that DeWitt had in effect at the time that LOPFI became operative was

---

[1] DeWitt covers its firemen under LOPFI, so there is no dispute regarding coverage to those employees.

not a relief fund as defined in LOPFI; thus, the City of DeWitt had the option to elect to become an employer and cover its employees under LOPFI. The court went on to point out that the city council of DeWitt never elected to participate in the plan. Finally, the trial court noted that the city might have violated LOPFI by electing to provide retirement benefits under another plan, but then concluded that such an issue was not before it. The trial court also stated that there was no statutory remedy provided for such a violation. An order reflecting this opinion was entered on April 30, 2003. From that order, comes the instant appeal.

Appellants argue that the trial court erred in granting summary judgment because the evidence established that DeWitt adopted a retirement plan in contravention of LOPFI. Appellants acknowledge that under the provisions of LOPFI, DeWitt did not have to adopt retirement coverage for its police officers, but they argue that the decision to adopt a contrary plan did violate its provisions. Appellants also argue that the trial court erred in ruling that such a violation was not the issue in this case and, thus, erred in granting the City of DeWitt's motion for summary judgment. Appellees counter that they are not in violation of this provision because the Pan American Life retirement plan is not similar in purpose to LOPFI. We agree with Appellants.

We note at the outset that summary judgment is no longer viewed by this court as a drastic remedy; rather, it is viewed simply as one of the tools in a trial court's efficiency arsenal. *Chavers v. General Motors Corp.*, 349 Ark. 550, 79 S.W.3d 361 (2002); *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001). As we have often stated, summary judgment is to be granted by a trial court if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001); *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000).

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a

matter of law. *Chavers*, 349 Ark. 550, 79 S.W.3d 361; *Fryar v. Roberts*, 346 Ark. 432, 57 S.W.3d 727 (2001). Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878, *cert. denied*, 537 U.S. 1003 (2002). This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.* After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Id.*

■   Before turning to an analysis of the issue at hand, we must reiterate that the basic rule of statutory construction is to give effect to the intent of the legislature. *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683 (2001). We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning. *Todd v. Ligon*, 356 Ark. 187, 148 S.W.3d 229 (2004). In addition, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002).

Pursuant to section 24-10-101, the purpose of LOPFI is "to establish a benefit program for future police officers and fire fighters in Arkansas and to establish a statewide retirement system which will have the advantages of pooled administration while preserving local rights and local contribution rates." The coverage provided by an employer is set forth in Ark. Code Ann. § 24-10-302 (Repl. 2002). Pertinent to the case before us, is section 24-10-302(a), which provides in relevant part:

> Each political subdivision without a relief fund in effect on the operative date *may* elect, by a majority vote of its governing body, to become an employer and cover its employees under the Arkansas Local Police and Fire Retirement System[.] [Emphasis added.]

In order to properly analyze this section and its application to the present dispute, it is necessary to refer to some of the

definitions set forth in Ark. Code Ann. § 24-10-102 (Supp. 2003). First, a "relief fund" is defined in section 24-10-102(28)(A) as "[a]ny police officers' pension and relief fund created by state law, applicable to police officers, and covering one (1) or more persons on December 31, 1982[.]" The "operative date" of this act is set forth in section 24-10-102(22) as January 1, 1983. "Employer" is defined in section 24-10-102(14) as "any political subdivision that has its eligible employees covered by the system." Finally, "employee" is defined in section 24-10-102(13)(A) as "any person regularly employed by a political subdivision who receives renumeration from the political subdivision for personal services rendered as a police officer or firefighter."

Thus, the initial question to be resolved is whether the City of DeWitt somehow falls within the confines of section 24-10-302(a). The trial court correctly determined that this provision was inapplicable. Clearly, under subsection (a), as indicated by the use of the word "may," a political subdivision has the discretion to elect to become an employer and to provide coverage under LOPFI. This court has often recognized that the word "may" is usually employed as implying permissive or discretionary, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. *Cortinez v. Arkansas Supreme Court Comm. on Prof'l Conduct*, 353 Ark. 104, 111 S.W.3d 369 (2003); *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001).

Nothing in section 24-10-302 makes participation in LOPFI mandatory. Moreover, there is no evidence to indicate that the City of DeWitt ever elected to become an employer and to cover its employees under LOPFI. Accordingly, the trial court's conclusion that section 24-10-302 did not mandate participation in LOPFI by the City of DeWitt was correct.

Our analysis, however, cannot end with that conclusion. We must look to the other provisions of LOPFI to determine if the City of DeWitt is in violation by adopting the Pan American Life retirement plan, in lieu of LOPFI. The trial court, in granting summary judgment, acknowledged this issue, stating: "The City may well have violated Ark. Code. Ann. § 24-10-302(c) by adopting the Pan American Life plan in 1989, but that is not the issue. Furthermore, the statute does not address the remedy for establishing a retirement plan in contravention of the law."

Appellants argue that by adopting the Pan American Life plan in 1989, DeWitt violated section 24-10-302(c), which provides:

> After the effective date, a political subdivision *shall not* commence coverage of its employees who are police officers or firefighters under another plan similar in purpose to this system, except social security. [Emphasis added.]

■ The effective date of LOPFI is set forth in section 24-10-102(12) as July 1, 1981. There appears to be no dispute that the DeWitt City Council voted on September 12, 1989, to cover city employees, including police officers, under the Pan American Life retirement plan. This plan became effective for employees on January 1, 1990. Once again, the language of section 24-10-302(c) is clear and unambiguous. The word "shall" indicates that this provision requires mandatory compliance. *See, e.g., Ray & Sons Masonry Contrs., Inc. v. United States Fid. & Guar. Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003); *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002).

■ The trial court's conclusion as to whether the adoption of the Pan American Life plan constituted a violation of LOPFI's provisions was not an issue before it was error. This very issue was raised by Appellants in their complaint and argued throughout the course of this litigation. Thus, the trial court should have reached this issue and considered whether the Pan American Life plan was "similar in purpose" to LOPFI in order to determine if there was a violation of section 24-10-302(c).

■ Likewise, the trial court's conclusion that nothing in section 24-10-302 sets forth a remedy if, in fact, DeWitt is in violation of LOPFI's provisions is error. The trial court cannot force DeWitt to participate in LOPFI, but it certainly can order that DeWitt terminate the Pan American Life retirement coverage. Such a conclusion is confirmed when one reads section 24-10-302 in its entirety. The statute on its face dictates that participation in LOPFI is discretionary, but participation in a plan with a purpose similar to LOPFI's is not an option. Instead, if a political organization chooses not to participate in LOPFI, the only other retirement option available to it is social security. In sum, the court cannot conclude that DeWitt violated the statute and then do

nothing about it. If a violation is found, the trial court must order DeWitt to cease covering its police officers under the Pan American retirement plan.

Reversed and remanded.

GLAZE, J., would reverse the trial court with directions to enter judgment.

TOM GLAZE, Justice, would reverse trial court with directions to enter judgment. I disagree with the majority's belief that a fact question exists on whether the Pan American Retirement Plan adopted by the City of Dewitt is "similar in purpose" to LOPFI, which would necessitate the denial of the City's motion for summary judgment. I, too, believe this matter should be reversed, but do so because no material fact issue exists and the City is bound by LOPFI as a matter of law.

Ark. Code Ann. § 24-10-301 (Repl. 2002) provides, in pertinent part, as follows:

(a) The membership of the Arkansas Local Police and Fire Retirement System *shall include* the following persons:

* * *

(2) If his or her employer had its police officers covered by a relief fund on the operative date, each person first employed as a police officer on or after the operative date *shall* become a member of this system and not be a member of the relief fund;

* * *

(4) *If* his or her *employer did not have its police officers covered by a relief fund on the operative date* [January 1, 1983],[1] *all persons employed as police officers* on the date the employer covers police officers under this subchapter *shall become members of the system* as of that date, and *each person first employed* as a police officer *thereafter shall become a member upon employment.*

(Emphasis added.) The City had adopted a private retirement plan with Pan American Life effective January 1, 1990, after the operative

---

[1] Ark. Code Ann. § 24-10-102(22) (Repl. 2002) defines "operative date" to mean January 1, 1983.

date, January 1, 1983, of LOPFI.[2] That plan, however, does not constitute a "relief plan," within the meaning of § 24-10-301(a)(4).

The term "relief fund," as used in § 24-10-301(a)(1) and (2), is defined in Ark. Code Ann. § 24-10-102(28)(A) (Repl 2002) as follows:

> "Relief fund" means:
>
> (A) Any police officers' pension and relief fund created by state law, applicable to police officers, and covering one (1) or more persons on December 31, 1982.

The private retirement plan offered by Pan American and adopted by the City was not authorized under state law as required by the above-quoted definition of "relief fund." Because the City did not have a "relief fund," as defined by § 24-10-102(28)(A), in effect on the operative date, the provisions of § 24-10-301(a)(4) are applicable.

In conclusion, the majority's interpretation of Ark. Code Ann. § 24-10-302(a) is, in my view, too broad. I agree that the City is not mandated to participate in LOPFI. However, if the City has, or chooses to provide, a retirement plan for its police officers, that plan must be covered by a relief fund. Consequently, because the City here has decided, after December 31, 1982, to cover its police personnel, the General Assembly has provided that the officers *shall* become a member of the LOPFI. The obvious reason for the General Assembly's passage of the LOPFI law is to establish a statewide benefit program for police officers hired after 1982, so that those officers will have the advantages of pooled administration, while preserving local rights and local rates.

For the reasons stated above, I would reverse the trial court with directions to require the City to cover its police personnel covered under LOPFI.

---

[2] By Ordinance 291, the City, in 1973, established a retirement plan, but, in 1977, the City transferred to a plan administered by New York Insurance Company. On September 12, 1989, the City adopted its plan with Pan American Life, which was effective January 1, 1990.