The Honorable Paul Bookout State Senator 1900 West Washington Jonesboro, Arkansas 72401-2577
Dear Senator Bookout:
I am writing in response to your request for an opinion on ten questions involving the State's or a state agency's liability for property taxes on property it purchases or otherwise acquires from non-exempt entities during a tax year. Specifically, you set forth four different "factual scenarios" and pose ten multiple-point inquiries with regard to these "fact scenarios." As an introduction to your "fact scenarios" and questions, you state the following:
Arkansas Constitution Article 16, § 5 explicitly mandates that all real and tangible personal property shall be taxed according to its value. Arkansas Constitution Article 16, § 6 mandates that all laws exempting property from taxation, other than provided in this Constitution shall be void. Article 16, § 5 and Ark. Code § 26-3-301
provide that property used exclusively for a public purpose shall be exempt from taxation.
Assessors throughout Arkansas are charged with the unequivocal duty to assess real property in the State of Arkansas as of the 1st of January not then exempt from taxation at the time of assessment. The Quorum Courts throughout Arkansas are charged with the unequivocal duty to levy the local property taxes for the schools, county and city, etc. upon real and personal property in the State of Arkansas not then exempt from taxation. Then, the Collectors throughout Arkansas are charged with the unequivocal duty to collect property taxes previously levied upon the lands. The assessors and collectors seek to fulfill their unequivocal duty to assure that the property taxes levied and due are collected for the benefit of the taxing units, the schools, counties and cities, etc. Likewise, there is an apparent inconsistency by state officials as to their affirmative duties and obligations under the law.
The various "fact scenarios," questions, and sub-questions you pose are as follows:
FACT SCENARIO FOR QUESTIONS 1-4:
Certain real property containing one acre is assessed as of January 1st of 2006 in accordance with Arkansas law, Ark Code 26-26-1101. The property taxes are levied upon the subject lands by virtue of the levy ordinance of the Quorum Court during the regular meeting in November of 2006 in accordance with Arkansas law, Ark, Code § 14-14-904. The preparer of the tax books delivers the tax books to the Collector prior to February of 2007 and Collector sends the tax bills during February of 2007 in accordance with Arkansas law. The one acre is assessed again from the first Monday of January, 2007. Ark Code § 26-34-101 explicitly provides: (a) Taxes assessed upon real and personal property shall bind them and be entitled to preference over all judgments, executions, encumbrances, or liens whensoever created. (b) All taxes assessed shall be a lien upon and bind the property assessed from the first Monday of January of the years in which the assessment shall be made and shall continue until the taxes, with any penalty which may accrue thereon, shall be paid. However, as between grantor and grantee, the lien shall not attach until the last date fixed by law for the county clerk to deliver the tax books to the collector in each year after the tax lien attaches. It should be assumed for purposes of this inquiry that the subject lands were assessed, the taxes levied upon the subject lands, and the preparer of the tax books delivered the tax books for collection of the subject taxes all in advance of purchase. Thereafter, the 9/10th of an acre of the subject lands are subsequently purchased by the State of Arkansas, or an agency or department of the State of Arkansas (hereinafter "State") on July 1, 2007 to be used exclusively for public purposes. The parcel acquired of 9/10th of an acre is only a portion of the one acre parcel that was previously taxed, i.e. a partial taxable parcel. The purchasing state agency does not withhold the sum of taxes imposed on the lands or remit the taxes imposed to the tax collector.
Question No. 1: Are the sums of taxes assessed, levied and billed due or to become due during at the time of the subsequent purchase by the State owed to the Collector for the benefit of the taxing entities? Are the officials and employees of State of Arkansas or any of its agencies or departments making the subject purchase under an affirmative and specific duty under law to withhold from the compensation for the amount of the taxes so due, or to become due, during the calendar year and remit them to the tax collector of the county in which the real property is located as required by Ark. Code § 18-15-101(a)? When does the real property purchased in July of 2007 by the State become exempt from future assessment by the assessor? On what date do the taxing units have a lien upon the subject lands for property taxes as provided under Ark. Code § 26-34-101? Does a tax lien in favor of the taxing units under Arkansas law constitute a property right? Do the lien and perfected secured indebtedness imposed upon the lands due and specified to be satisfied under Ark. Code § 18-15-101(a) or Ark. Code § 27-65-138(a) constitute a property right or interest in property in favor of [t]he taxing units or taxpayers?
Question No. 2: Are the officials and employees of the State of Arkansas and its agencies or departments, including the Arkansas State Highway Commission ("ASHC") and the Arkansas State Highway Department ("AHTD") under an affirmative and specific duty to withhold from the compensation the amount of the taxes so due, or to become due, during the calendar year and remit them to the tax collector of the county in which the real property is located as required by Ark. Code §18-15-101(a) (enacted by the Acts 1969, No. 54, § 1)? (Reference is made to Ark. Code § 26-3-301(4) and Attorney General Opinions Nos. 92-189 and 86-494.) Are the officials and employees of the State of Arkansas making such a purchase under the affirmative obligations under Ark. Code §18-15-101(a) notwithstanding that the subject lands are being used for public purposes and become exempt from future assessment and taxation from the date of purchase during 2007 by virtue of Article 16, § 5 and Ark. Code § 26-3-301?
Question No. 3: The AHTD asserts withholding and remission of the taxes previously assessed and imposed on acquisitions of whole taxable parcels but does not withhold or remit the taxes due on purchases on partial taxable parcels. Even though the taxes assessed, imposed and due during the calendar year of purchase of 2007 are just as much a legal debt as in the acquisition of a partial taxable parcel as a whole taxable parcel: AHTD officials assert that the reason for failing to remit on partial taxable parcels (rather than whole taxable parcels) is by "virtue of Article 16, § 5 and Ark. Code § 26-3-301(4)." Do Article 16, § 5 or Ark. Code § 26-3-301 differ in application depending on whether the tract purchased constitutes a whole taxable parcels or a partial taxable parcels? If Article 16, § 5 and Ark. Code § 26-3-301
somehow bars remission of taxes owed on partial takings or partial taxable parcels, then how is it legal for the AHTD to remit taxes due and owing on whole taxable parcels as provided under Ark. Code §27-65-138(a)? Is Ark. Code § 27-65-138(a) constitutional or does it conflict with Article 16, § 5 or Ark. Code § 26-3-301(4) as suggested by the AHTD?
Question No. 4: Ark. Code § 27-65-138(a) authorizes the officials and employees of the AHTD on behalf of the ASHC to collect from the owner(s) of lands acquired constituting whole taxable parcels the sum of taxes due or that will become due and payable for anytime period prior to acquisition and to remit such taxes to the appropriate taxing or assessing authorities. Is there any provision under Arkansas law to prevent the officials and employees of the AHTD from withholding from the owner(s) of lands acquired constituting whole taxable parcels the sum of taxes due or that will become due and payable for anytime period prior to acquisition and to remit such taxes to the appropriate taxing or assessing authorities? Did enactment of Ark. Code § 27-65-138(a) (enacted by the Acts 1991, No. 961, § 1; 2001, No. 1135, § 1) repeal Ark. Code § 18-15-101(a) (enacted by the Acts 1969, No. 54, § 1)? What effect, if any, does Ark. Code § 27-65-138(a) have on any of the answers to questions #1, #2 or #3 above?
FACT SCENARIO FOR QUESTIONS 5-7:
The tax collectors seek withholding and remittance of property taxes imposed on lands to be acquired in 2008 and in the future by the AHTD and seek compliance with the laws of Arkansas.
Question No. 5: Does the failure to perform the affirmative duties under law to withhold and remit payment in satisfaction of property tax liens imposed by the Constitution and laws of Arkansas constitute an ultra vires or illegal act or omission? Does it constitute a confiscation of property right or confiscatory act by a state official? What laws protect the taxing units from attempts to obtain a transfer of title to lands contrary to law and without the affirmative discharge to the tax lien? Could the tax collector, the taxing units or taxpayer obtain a declaratory judgment and mandatory injunction to prevent the sale of land proceeding contrary to law? From committing an ultra vires or illegal act or omission? Suits against the State of Arkansas are prohibited under sovereign immunity. However, if the employees of the AHTD are acting ultra vires or illegally and failure to perform the affirmative and specific duties set forth in Ark. Code § 18-15-101(a) and otherwise, are they exposing the officials of the AHTD and ASHC to suit for a prospective injunction or mandamus to perform the specific and affirmative duties prescribed by law? May the tax collector, tax units or tax payers obtain an escrow from the courts of the sum of taxes due or to become due during the calendar year of purchase?
Question No. 6: By failing to comply with Ark. Code § 18-15-101(a) or otherwise failing to remit the taxes due and owed, are the officials and employees of the AHTD subjecting themselves and the ASHC to exposure for an injunction by the tax collector, taxing units or a taxpayer under Article 16, § 13 to establish escrow for un-remitted taxes due owing? Would disbursement of the funds to the landowner, rather than remitted under Ark. Code § 18-15-101(a) or Ark. Code § 27-65-138(a) constitute "money or property belonging to public school fund or the state for the benefit of schools" under Article 14, § 2? Would misdirection or use of those funds, for purposes other than schools as required Article 14, § 2 including disbursing provided them to the landowner, rather than remitting them to the tax collector, constitute an illegal exaction?
Question No. 7: If the tax collectors or taxing units pursue remedies under Ark. Code § 18-15-101(b) before the Arkansas State Claims Commission, may the State of Arkansas or its commissions or departments obligated [sic] to pay the taxes and penalties and interest provided for under Ark. Code § 26-34-101(b)? May the State of Arkansas become obligated to pay the costs authorized by the General Assembly for actions to collect public revenues under Ark. Code § 26-34-108, including attorneys' fees? Upon failure to remit the taxes imposed and due prior to delinquency on October 11, 2007, would the taxes with interests, penalties, and attorneys fees comprise the measure of "just and legal debts of the State"?
FACT SCENARIO FOR QUESTION 8:
A sale and deed conveying title to the whole taxable parcel of one acre is executed and filed on July 1, 2007.
Question No. 8: Under Arkansas law since there is no cause of action against the landowner for nonpayment of taxes, to whom does the tax collector send the property tax bill in 2008 for the 2007 assessment? Under Arkansas law, does the landowner have any obligation whatsoever to pay the 2007 assessment of property taxes? Does the unsatisfied lien for the 2007 assessment of taxes go with the land and constitute a property right and debt owed by the acquiring state entity?
FACT SCENARIO FOR QUESTIONS 9 10:
A sale and deed conveying title to 9/10th of an acre or partial taxable parcel of a one acre whole tract is executed and filed on July 1, 2007. The landowner was without the use of the land for the assessed lands for the entire year.
Question No. 9: Again, under Arkansas law since there is no cause of action against the landowner for nonpayment of taxes, to whom does the tax collector send the property tax bill in 2008 for the 2007 assessment? Under Arkansas law, does the landowner have any obligation whatsoever to pay the 2007 assessment of property taxes? Does the unsatisfied lien for the 2007 assessment of taxes go with the land and constitute a property right and just debt owed by the acquiring state entity?
Question No. 10: If the state withheld taxes assessed from payment of just compensation to the landowner: Wouldn't withholding of taxes assessed avoid liability by the state to a sum in excess of the agreed just compensation?
RESPONSE
The answers to many of your questions will depend, in a given instance, on all the surrounding facts and circumstances. This office cannot address hypothetical factual scenarios. See, e.g., Ops. Att'y Gen. 2006-128; 2006-120; 2006-019; 2003-300; and 2001-301. Instead of answering your numerous questions point-by-point, therefore, I will merely address the subject matter of your "factual scenarios" and multiple questions with the recitation of few straightforward conclusions. I believe that the following discussion adequately answers your Questions 1-4 and Questions 8-9. With regard to your Questions 5-7, I am not in a position, as the State's chief legal officer, to provide my opinion or advice on the appropriate legal remedies that may be pursued against the State, its agencies, or officers. The relevant local taxing authorities must look to their own local counsel for such advice. Finally, I am unable to determine the exact inquiry posed by Question 10.
With regard to exemptions from property tax generally, it is stated in Op. Att'y Gen. 92-189 as follows:
Under Arkansas law, all real and personal property is subject to ad valorem taxation unless specifically exempted by the Arkansas Constitution. Ark. Const. art. 16, § 6. The only exemptions authorized by the Constitution are found in Article 16, § 5, which provides:
The following property shall be exempt from taxation: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity. [footnote omitted.]
In listing property generally exempt from taxation, the Arkansas Code Annotated states in pertinent part as follows:
All property described in this section, to the extent limited, shall be exempt from taxation:
* * *
All property, whether real or personal, belonging exclusively to this state, including property of state agencies, institutions, boards, or commissions, or the United States.
A.C.A. § 26-3-301(4) (Cum. Supp. 1991).
Id. at 2. See also, A.C.A. § 26-3-308 (Repl. 1997) (stating that all property owned by the Arkansas State Highway Commission or the Arkansas State Highway and Transportation Department is public property used exclusively for public purposes).
Notwithstanding any statutory exemptions, however, it has been stated that the right of exemption must be found in the constitution, since art. 16, § 6 so provides. See Missouri Pacific Hospital Association v. Pulaski County, 211 Ark. 9, 199 S.W.2d 329 (1947); School District of Fort Smith v. Howe, 62 Ark. 481, 37 S.W. 717 (1896); Brodie v. Fitzgerald, 57 Ark. 445, 22 S.W. 29 (1893), and Ex Parte Gaines,56 Ark. 212, 19 S.W. 602 (1892). Your questions appear to assume that the use of the state properties in question will meet the constitutional test for exemption.
As a general matter, however, when the state or other exempt entity purchases property from a non-exempt entity after the first Monday in January of a tax year, the real estate is not exempt from property taxes for the year in which purchased. Op. Att'y Gen. 94-302; 92-189; and 81-022. This is true because the so-called "lien date" for property taxes is the first Monday in January. See A.C.A. § 26-34-101(b), which provides that:
(b) All taxes assessed shall be a lien upon and bind the property assessed from the first Monday of January of the year in which the assessment shall be made and shall continue until the taxes, with any penalty which may accrue thereon, shall be paid. However, as between grantor and grantee, the lien shall not attach until the last date fixed by law for the county clerk to deliver the tax books to the collector in each year after the tax lien attaches.
As a consequence, it has been stated that:
[T]he manner in which real property taxes are assessed and collected depends upon the status of the property as of the first day of January. Arkansas law does not contain a provision which would allow taxes to be assessed only for the portion of the year in which a taxable organization holds the property. If the property was taxable as of January 1, . . . the correct manner in which to proceed is for the taxes to be assessed for the entire year, without regard to a change in the status during the year.
Id. at 2, quoting Op. Att'y Gen. 86-494. See also, Ops. Att'y Gen.2000-011; 93-087 and 81-022. (As explained in Op. Att'y Gen. No. 93-087, however, the date that the lien becomes fixed is not the assessment date of January 1, but rather the first Monday in January.) See A.C.A. §26-34-101(b).
The rationale for this rule is explained in Robinson v. Indiana 
Arkansas Lumber and Manufacturing Company, 128 Ark. 550, 194 S.W. 870
(1917). That case involved lands purchased by a public improvement district from a non-exempt owner during a tax year. The Arkansas Supreme Court in Robinson, in explaining the prior case of Bonner v. Board of Directors of St. Francis Levee District, 77 Ark. 519, 92 S.W. 1124
(1906), stated that "[t]here [in Bonner] the assessment had been completed, and the State and county taxes had become a fixed lien on the lands before their purchase by the levee district, and the court simply meant to hold that a change in the use of property after the State and county taxes had become a lien did not release the land from liability for such taxes." The court reasoned that "the reason is that to so hold would be to give a retrospective effect to the section of the Constitution above referred to" and that "[a]n exemption from taxes created by the Constitution will not be given a retrospective effect unless an intention that it shall have such an effect is clearly expressed and it is apparent that the section of our Constitution relating to this subject was not intended to operate retrospectively." Id. at 554.
Thus, as stated in Op. Att'y Gen. 92-189: "There is no provision in the Arkansas Code for the State or its agencies to be relieved of liability for the tax on real property after the lien has attached." In addition, "Attorney General Opinion No. 81-022 correctly states that the statutes do not provide for the proration of taxes on property that is transferred or changes status during the year." Op. Att'y Gen. 94-302 at 2.[1]
Liability for the taxes, however, is ordinarily "a proper matter of contract between the buyer and the seller." Op. Att'y Gen. 92-189. As stated in Op. Att'y Gen. 94-302:
Opinion No. 81-022 correctly states that as between grantor and grantee, under A.C.A. §§ 26-34-101 and 26-28-108, tax liability does not attach until the third Monday in February. These provisions have significance only to the extent that they affect the warranties included in a warranty deed. That is, if property is transferred by way of warranty deed on a date after the third Monday in February and the grantor has warranted that the property is unencumbered, he is liable to a claim of breach of warranty because of the prior attachment of the tax lien. Even in that instance, however, the grantee would still be liable for payment of the taxes under A.C.A. § 26-18-501(a). He would simply have an avenue for recovery of the amount from the grantor.
Id. at 2. See also, Broadhead v. McEntire, 19 Ark. App. 259720 S.W.2d 313 (1986).
If there is no warranty deed, as is the case with regard to an eminent domain action, Op. Att'y Gen. 94-302 stated the following:
The provisions of A.C.A. § 26-34-101(b) do not affect situations in which the property has not been acquired by warranty deed. Where property has been acquired by eminent domain, no warranties have been made as to whether the property is encumbered. In addition, the amount paid for the property in an eminent domain proceeding is the market value of the property, which is determined by taking into consideration every element that would affect the value of the property and that a businessperson of ordinary prudence would consider before purchasing the property. Barnes v. Arkansas State Highway Commission, 10 Ark. App. 375,664 S.W.2d 884 (1984). Presumably, this was the valuation procedure that was followed in the eminent domain proceeding by which the City of Siloam Springs acquired the property at issue. If so, all possible tax liabilities were figured into the purchase price that was paid, which would have resulted in a reduction of the purchase price.
Id. at 2.
In either event, after the lien date for a particular tax year, the lien attaches and the taxes are owing for that tax year. See A.C.A. § 26-34-101(b). Thus, if property is not exempt on the lien date, some person or entity is liable for the taxes. Your four different factual scenarios and myriad questions appear to agree with this conclusion. The thrust of your numerous questions involve, rather, the proper method of enforcement of any taxes owing in such a situation. Problems arise, from the perspective of the local taxing entities (if the State or one of its agencies is the purchasing or acquiring entity), for at least two reasons. First, sovereign immunity prevents most types of lawsuits against the State (see Arkansas Constitution, art. 5, § 20 and LandsinPulaski, L.L.C. v. Arkansas Department of Correction (Ark. Supreme Court, No. 06-1334, December 13, 2007). Second, the usual procedure for forfeiture of tax delinquent lands is ineffective against the State, because no tax title is valid or binding against its interests. A.C.A. § 22-5-402 (Repl. 2004). See also, Rywell, L.L.C, and Pulaski Lands, L.L.C v. Arkansas Development Finance Authority (Ark. Supreme Court, No. 07-334, December 13, 2007).
In the face of this state of the law, two separate statutes have been enacted to address the situation of outstanding tax liability on property purchased by the state or state agencies. See A.C.A. §§18-15-101 (Repl. 2003) and 27-65-138 (Supp. 2007). You refer to and pose questions regarding each of these statutes. The first statute, adopted in 1969, addresses the general procedure for all state agencies in this regard:
(a) When the State of Arkansas or any of its agencies or departments shall purchase or take by eminent domain any real property for any purpose and any ad valorem taxes are due, or will become due, during the calendar year in which the purchase or taking occurs, then the state or its agencies or departments purchasing or taking the real property shall withhold from the compensation therefor the amount of the taxes so due, or to become due, during the calendar year and shall remit them to the tax collector of the county in which the real property is located.
(b) If the state or any of its agencies or departments shall fail to withhold and pay the tax upon real property as required pursuant to this section, the county in which the property is located shall be entitled to file a claim with the State Claims Commission and to recover the amount of taxes on property purchased or taken by eminent domain as provided in this chapter from the state or its agency or department failing to comply with this section.
(Emphasis added).
This statute, in my opinion, places a mandatory duty on the State or a state agency to withhold, from the compensation paid, the taxes due or to become due, during the calendar year in which the purchase or taking occurs.[2] The statute above uses the word "shall," which is ordinarily interpreted as imposing a mandatory duty. See, e.g., Gonzales v. City of DeWitt, 357 Ark. 10, 159 S.W.3d 298 (2004) and Singleton v. State, 337 Ark. 503, 989 S.W.2d 533 (1999) (stating that the term "shall," when used in statutory language, usually indicates a legislative intent that the provision be mandatory.) Although liability for taxes may be a proper matter of contract between the parties, this statute, in effect, places liability for such taxes on the seller of property to the State, and requires the State to deduct, from the compensation due the seller, the amount of any such taxes. The State is then required to remit the amount of the taxes to the tax collector of the appropriate county. Notwithstanding this conclusion, the only remedy for the State's non-compliance with the latter requirement is resort to the Arkansas State Claims Commission. Subsection (b) of the statute makes this clear.
The second statute is A.C.A. § 27-65-138. It was originally adopted in 1991 and was amended in 2001. See Acts 1991, No. 961 and Acts 2001, No. 1135. It has reference only to the Arkansas State Highway and Transportation Department, ("AHTD"), acting on behalf of the Arkansas Highway Commission, and does not control the procedure for other state agencies or entities. It provides as follows:
(a) Notwithstanding the provisions of any laws to the contrary, the Arkansas State Highway and Transportation Department, acting on behalf of the State Highway Commission, is hereby authorized, on acquiring whole taxable parcels of property upon which real estate taxes or assessments are due and payable or which shall become due and payable for any time period prior to the acquisition, to collect from the owner or owners of such property such taxes or assessments and to remit such taxes or assessments to the appropriate taxing or assessing authorities.
(b) Likewise, upon a showing by the department of such tax or assessment amounts, the courts of this state may deduct such amounts prior to delivering any orders regarding compensation by the department or commission to the owner or owners, and the department shall remit such taxes or assessments to the appropriate taxing or assessing authorities. In those instances where the department acting on behalf of the commission has deposited an estimated just compensation amount with the court, the department shall notify the county tax collector of that deposit.
This statute contains two separate subsections, which address different situations.
Subsection (a) authorizes AHTD, upon acquiring "whole taxable parcels" of real property, to collect outstanding taxes and assessments from the owner or owners of such property (meaning the sellers), and to remit the taxes and/or assessments to the proper taxing authorities. Again, notwithstanding the general rule that liability for taxes is a proper matter of contract between the parties, this statute authorizes AHTD, when negotiating consensual acquisitions of property, to place liability for outstanding taxes on the seller by collecting the taxes from the seller and remitting them to the taxing authorities. The statute applies, however, only to "whole taxable parcels." This limitation was presumably placed in the statute in light of the fact that, at least at the time of the statute's original passage (1991), it would have been impossible for AHTD to conclusively determine the precise tax liability it should collect from the owner or owners on less than a whole taxable parcel at the time of sale.[3] In addition, subsection (a) of this statute is not mandatory. It allows, but does not require, the AHTD to collect and remit such taxes. The use of the word "authorized," which is the relevant word used in subsection (a) of A.C.A. § 27-65-138, has been held to be "simply permissive," "directory" and "discretionary." Arkansas Memphis Ry. Bridge Terminal Co. v. State, 174 Ark. 420,295 S.W. 378 (1927) and Pittman v. Road Improvement District No. 1 of Nevada County, 147 Ark. 87, 227 S.W. 4 (1921).
If this procedure is followed as to a particular "whole taxable parcel," the AHTD collects the outstanding taxes and remits them to the taxing authorities. In my opinion, as stated above, however, the provision is not mandatory and does not apply to partial taxable parcels. If AHTD chooses not to follow the procedure in a given case, or if the acquisition is of a partial taxable parcel, in my opinion no state statute governs the applicable procedure. In my opinion the general provisions of A.C.A. § 18-15-101 (applicable to all state agencies), do not apply to AHTD in that event. It has been held that a general statute does not apply when there is a specific statute covering a particular subject matter. Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994), citing Cozad v. State, 303 Ark. 137, 792 S.W.2d 606
(1990). Section 27-65-138 has particular reference to the Arkansas Highway and Transportation Department and covers the same subject matter as A.C.A. § 18-15-101, which applies to the State and state agencies generally. I thus cannot conclude that A.C.A. § 18-15-101 applies to impose any mandatory duty on the AHTD to remit taxes on the acquired property, or to do so with regard to partial taxable parcels.
That being the case, the general principles addressed earlier in this opinion will apply. The property, if acquired after the lien date, is not exempt from property taxes for that year. Some person or entity will be responsible for the taxes. Ultimate liability for the taxes, as between the parties, may depend upon any agreement between them, or in certain circumstances, upon the existence of a warranty deed given by the seller. Where the acquiring entity is the State or a state agency, it may, depending upon the particular facts, be the party responsible for paying the taxes. See Op. Att'y Gen. 92-189. Assuming the AHTD, as the acquiring entity, is the responsible party, and assuming it does not remit the taxes under subsection (a) of A.C.A. § 27-65-138, the local taxing authorities are presented with an enforcement problem due to the State's sovereign immunity (Arkansas Constitution, art. 5 § 20), and in light of the facts that a tax sale of the property will not affect the interest of the State. See again, A.C.A. § 22-5-402. Again, in such case, the remedy is resort to the Arkansas Claims Commission. I am unable to speculate, in the absence of all attendant facts, whether any other remedy would be available or whether any exception to sovereign immunity would apply in such case. In any event, I am not in a position, as the State's chief legal officer, charged with representing and defending state agencies, to opine upon this issue. Such issues must be addressed by the taxing authorities' counsel, or if necessary by a court of competent jurisdiction.
Subsection (b) of A.C.A. 27-65-138 addresses the procedure in eminent domain cases. It authorizes a court to deduct the amount of any outstanding taxes prior to ordering an award of compensation to the owner. See also, A.C.A. § 27-67-314(c) (Repl. 1994) (stating that the "court shall also have the power to direct the payment of delinquent taxes and special assessments out of the amount determined to be just compensation, and to make such orders with respect to encumbrances, liens, rents, insurance, and other charges, as shall be just and equitable"). If a court deducts the amount of taxes prior to awarding compensation, A.C.A. § 27-65-138(b) then places a mandatory duty on the AHTD to remit the taxes or assessments to the appropriate taxing or assessing authorities. If the AHTD fails to perform this mandatory duty in such a case, again, the remedy is resort to the Arkansas Claims Commission. As stated above, I am unable to speculate, in the absence of all attendant facts, whether any other remedy would be available. In addition, I must decline to speculate as to whether any exception to sovereign immunity would apply in such case.
I hope the foregoing is helpful in addressing the many questions you have posed. Although I have stated my opinion in general terms, rather than by addressing your myriad questions point-by-point, I believe that the foregoing adequately answers your Questions 1-4 and Questions 8-9. With regard to your Questions 5-7, I am not in a position, as the State's chief legal officer, to provide my opinion or advice on the appropriate legal remedies that may be pursued against the State, its agencies, or officers. The relevant local taxing authorities must look to their own local counsel for such advice. Finally, I am unable to determine the exact inquiry posed by Question 10.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] As noted in Op. Att'y Gen. 93-087 at n. 2, however, there is a statutory provision allowing the proration of taxes when a qualified veteran sells him home to a non-exempt individual. This statute is not relevant to the facts you describe, however.
[2] The statute requires the withholding of taxes that are "due, or will become due, during the calendar year in which the purchase or taking occurs. . . ." Taken literally, this language requires the State or the state agency to withhold only any previous year's taxes that are due and owing in the year of purchase, and not any current-year taxes for which liability has attached in the same year of purchase. The latter taxes are not "due" until the succeeding year. As noted in Op. Att'y Gen. 1991-169, quoting Op. Att'y Gen. 89-350, taxes are collected "between the third Monday in February up to and including October 10 in the year succeeding the year in which the levy is made"). Id. at 2, citing A.C.A. § 26-35-501 (Supp. 1989).
[3] An act was passed two years later in 1993 to authorize, under certain circumstances, a person acquiring a portion of a parcel to request the county assessor to "apportion" the current assessment between the remaining portion of the parcel and that acquired by the person making the request. A.C.A. § 26-26-1115. Under the latter statute, the assessor allocates the assessment and provides the information to the county collector, who may accept payment in full toward any prior year's taxes currently due according to the values provided in the notification. This statute had not been adopted at the time A.C.A. § 27-65-138 was originally adopted and I cannot conclude that the latter statute requires AHTD to follow the procedure outlined in A.C.A. § 26-26-1115 in order to determine the amount of tax liability to collect and remit under A.C.A. § 27-65-138. The same may be said for the State or state agencies other than the Arkansas Highway and Transportation Department under A.C.A. § 18-15-101, when it or they purchase partial taxable parcels. These entities may similarly be unable to calculate the precise amount of taxes to withhold as of the date of sale.