The Honorable Jane English State Representative
35 Forest Glade Circle North Little Rock, AR 72120-1546
The Honorable Allen Kerr State Representative
1429 Merrill Drive Little Rock, AR 72211-1819
Dear Representatives English and Kerr:
You have requested my opinion on 50 questions concerning A.C.A. § 6-61-203, which governs the appointment of the Director of the Department of Higher Education ("Director") by the Arkansas Higher Education Coordinating Board ("Board").[1] Because your questions overlap considerably, and because they essentially fall into four groups, I will separate and restate them by group and respond accordingly.
SUMMARY RESPONSE
All questions in the first group seek definitions and, what you call, "legal criteria" by which one can determine that a person or action meets those definitions. Because every word or phrase in question is being used in a common-sense, colloquial manner, I will provide standard dictionary definitions. The statute does not provide any "legal criteria" to meet any of these definitions. Instead, one must evaluate the standard lexical meanings of the terms in order to identify the relevant factors in determining whether a particular person or action meets that definition.
The second group of questions asks whether "it is legal" for the Board to fail to perform some set of actions that the relevant statutes make mandatory. The answer to all these question is "no." If the statute requires certain actions, and there are no *Page 2 
exceptions, then of course it would violate the statute to fail to perform those actions.
The third set of questions asks about "potential legal ramifications" if the Board appoints someone to the directorship where either (a) the Director is not qualified, or (b) the Board failed to take some actions that the statutes require it to take. In my opinion, a failure to comply with all the requirements of A.C.A. § 6-61-203 will not invalidate the Director's actions. The so-called "de facto" doctrine will instead apply to give validity to those actions while the appointee retains the position.
The fourth group of questions asks me to specifically consider the case of the proposed appointment of Interim Director Shane Broadway to the directorship. You ask me to assess whether all the entities or persons involved — i.e., the Presidents Council, Interim Director Broadway, and the Board itself — have met or performed all the statutory requirements. But because — as this office has repeatedly said for decades — the opinion rendering function of this office is limited to discussing applicable law, not determining facts and applying the law to facts, I cannot resolve the questions in this fourth group.
Category I
This first set of questions focuses on the meaning of the statutory language, and specifically the following emphasized language in section 6-61-203:
 (a)(1)(A) The Arkansas Higher Education Coordinating Board shall appoint a director through a search and selection process
that includes substantial input, review, and recommendation from the Presidents Council, subject to confirmation by the Governor.
 * * * (3) The director shall be an experienced educator in the field of higher education who demonstrates competence in the field of institutional management and finance. The director and key staff must have relevant experience on a campus of higher education. *Page 3 
 (b) The professional qualifications and salary of the director and other members of the staff employed by the board shall be comparable to those in colleges and universities.[2]
In this regard, you have asked for the definition of terms, as well as the "legal criteria" for determining whether the statutory requirements have been satisfied. Your questions can be further categorized based on the particular statutory subsection at issue.
A.C.A. § 6-61-203(a)(1)(A)
With regard to subsection 6-61-203(a)(1)(A), you have asked me to identify the "legal criteria" the Board must meet to fulfill the requirement that the Director be appointed through a "search and selection process that includes substantial input, review, and recommendation from the Presidents Council."
RESPONSE
There are no established criteria for fulfilling this requirement. Insight must be gleaned instead from the common meaning of the individual words of the phrases "search and selection process" and "substantial input, review, and recommendation." This is true because these phrases are not defined in section 6-61-203 or elsewhere in Arkansas law, and they have no fixed legal significance.[3] Nor do these phrases, as such, have "ordinary and usually accepted meaning[s] in common language."[4]
In determining the meaning of the individual terms that make up these phrases, we must assume that the legislature intended to use the terms in their "usual and *Page 4 
natural meaning."[5] This meaning is typically exemplified by a standard dictionary. Accordingly, I will provide dictionary definitions of the terms that are the component parts of the phrases.[6]
Regarding "search and selection process":
 • "search" means "to inquire, investigate, examine, or seek" [p. 1727];
 • "selection" means "an act or instance of selecting or the state of being selected; choice" [p. 1734];
 • "process" means "a systematic series of actions directed to some end" [p. 1542].
The phrase "search and selection process" is therefore reasonably interpreted to mean a "systematic series of actions directed to seeking and choosing."
Regarding "substantial input, review, and recommendation":
 • "substantial" is an adjective referring to "ample or considerable amount, quantity, size" [p. 1897];
 • "input" is a noun (in this case) meaning "to contribute (ideas, information, or suggestions) to a project, discussion, etc." [p. 985];
 • "review" means "a general survey of something, esp. in words; a report or account of something" [p. 1648];
 • "recommendation" is a noun meaning "the act of recommending" [p. 1612]; "recommending" means "to present as worthy of confidence, acceptance, use, etc." [p. 1612]. *Page 5 
The phrase "substantial input" therefore means "the contribution of a considerable amount, quantitatively speaking, of ideas or suggestions."
You have also asked whether the word "substantial" modifies "review" in the phrase "substantial input, review, and recommendation." In my opinion it does not. To conclude otherwise would mean that "substantial" also modifies "recommendation," which defies common sense, contrary to established rules of statutory construction.[7] Additionally, an adjective is usually placed immediately before the word it modifies, [8] indicating that "substantial" in this case clearly modifies "input." And the placement of commas after "input" and "review" shows that there are three distinct items in the list, i.e., "substantial input," "review," and "recommendation."[9] This confirms legislative intent for "substantial" to modify only the word "input."
A.C.A. § 6-61-203(a)(3)
Regarding the language of subsection 6-61-203(a)(3), you have requested definitions of "experienced," "educator," "experienced educator," "field of higher education," "experienced educator in the field of higher education," and "must have relevant experience on a campus of higher education." You have also asked me to identify the legal criteria the Board must meet to fulfill the requirements of subsection 6-61-203(a)(3).
RESPONSE
The definitions of these individual terms and the phrases they comprise will depend upon what the terms and phrases commonly signify. As I and my predecessors have routinely advised, the Attorney General cannot formulate a controlling definition of a term that the legislature has not itself expressly defined.[10] As explained above, however, it will be presumed by the Arkansas *Page 6 
Supreme Court that the legislature intended to use the term in its "usual and natural meaning."[11] As further noted above, this usually requires reference to standard dictionary definitions. In this regard:
 • Webster's defines "experienced" as an adjective that indicates someone who is "wise or skilful in a particular field through experience." "Experience," which is also an adjective, means, among other things, "knowledge or practical wisdom gained from what one has observed, encountered, or undergone" [p. 681].
 • An "educator" is a noun signifying a "person or thing that educates, esp. a teacher, principal, or other person involved in planning or directing education." [p. 621] "Educate" is a verb that means "to develop the faculties and powers of (a person) by teaching, instruction, or schooling." [p. 621].
 • There is no separate definition of "experienced educator." Rather, the definition is simply the sum of its parts, "experienced" and "educator," which were both given above.
 Therefore, an "experienced educator" generally is "one who, through what he or she has observed or undergone, has become skillful at (1) instructing others, or (2) planning or directing others."
 • Likewise, there is no separate, common definition of "field of higher education." Rather, the common definition of this phrase is simply the sum of its parts. "Field," as that term is used in subsection (a)(3), is a noun that signifies "a sphere of activity, interest, etc., especially within a particular business or profession: the field of teaching; the field of Shakespearean drama." [p. 714] "Higher education" denotes "education beyond high school, esp. that provided by colleges, and graduate and professional schools." [p. 902.] Therefore, "field of higher education," as used in this statute, refers to "the sphere of activity of education beyond high school."
 • The definition of "experienced educator in the field of higher education" is, again, the sum of its parts. *Page 7 
 • There is no commonly understood definition for the entire phrase "must have relevant experience on a campus of higher education." Rather, consistent with the above analysis, the phrase is the sum of its component parts. The words "experience" and "higher education" were defined above. The words "must" and "have" are common-sense terms that do not require separate definition. "Relevant" is an adjective that means "bearing upon or connected with the matter in hand." [p. 1628]. And "campus" means "the grounds . . . of a college, university, or school." [p. 302].
 In my opinion, the "relevant experience" requirement imposed on the "director" under subsection 6-61-203(a)(3), bears most closely upon the "experienced educator" qualification. I believe this follows from the doctrine of "noscitur a sociis," a statutory construction aid which literally translates to "it is known from its associates." This doctrine provides that a word can be defined by the accompanying words.[12]
And it can have the effect of limiting the scope of general language to the specific language of its context.[13]
 Accordingly, in the context of subsection (a)(3), and as applied to the directorship, the phrase "must have relevant experience on a campus of higher education" in my opinion means that a candidate for Director must have gained, on the grounds of a college or university, some knowledge or practical wisdom in either (1) instructing others or (2) planning or directing education beyond high school.
In response to your question as to the "legal criteria" the Board must meet to fulfill the requirements of subsection 6-61-203(a)(3), it must be noted that similar to subsection (a)(1)(a) discussed above, there are no established criteria for fulfilling these requirements, apart from the common meaning of the individual words of the applicable phrases: "an experienced educator in the field of higher education" and "relevant experience on a campus of higher education." This stands in *Page 8 
contrast to a number of other statutes that specify the manner or means of satisfying the prescribed qualifications for certain positions.[14]
A.C.A. § 6-61-203(b)
With regard, finally, to the language of subsection 6-61-203(b), you have requested definitions of "professional qualifications" and "comparable to those in colleges and universities." You have further asked me to identify the legal criteria to determine "professional qualifications" and to determine that a Director candidate's "professional qualifications" are "comparable to those in colleges and universities."
RESPONSE
As for definitions of these phrases, this will again depend upon the common meaning of the individual terms, as exemplified by the following standard dictionary definitions:
 • "professional" is an adjective meaning "of, pertaining to, or connected with a profession." [p. 1544]. "Profession" means "a vocation requiring knowledge of some department of learning or science: the profession of teaching." [p. 1544].
 • "qualification" is a noun referring to "quality, accomplishment, etc. that fits a person for some function." [p. 1579]. *Page 9 
 • Regarding the phrase "comparable to those in colleges and universities," "comparable" is an adjective meaning "capable of being compared; having features in common with something else to permit or suggest a comparison; "similar." [p. 416].
 In the context of subsection 6-61-203(b), the phrase "comparable to those in colleges and universities" requires that the Director's professional qualifications be similar to the professional qualifications of those persons in colleges and universities who serve in positions that are most analogous to the directorship.
Category II
Your second group of questions asks whether "it is legal" for the Board to fail to perform some set of actions that the relevant statutes make mandatory. You ask:
 • Is it legal for the Arkansas Higher Education Coordinating Board to appoint a director without performing a "search and selection process?"
 • Is it legal for the Arkansas Higher Education Coordinating Board to appoint a director without performing a "selection process that includes substantial input, review, and recommendation from the Presidents Council?
 • Is it legal for the Arkansas Higher Education Coordinating Board to appoint a director who is not "an experienced educator in the field of higher education?"
 • Is it legal for the Arkansas Higher Education Coordinating Board to appoint a director who does not "have relevant experience on a campus of higher education?"
 • Is it legal for the Arkansas Higher Education Coordinating Board to appoint a director whose "professional qualifications" are not "comparable to those in colleges and universities?" *Page 10 
The answer to each of these questions is "no." Subsection 6-61-203(a)(1)(A) clearly states that the Board "shall" appoint a Director through a "search and selection process that includes substantial input, review, and recommendation from the Presidents Council."[15] Similarly, a plain reading of subsection (a)(3) indicates that the Board is required to appoint a Director who is "an experienced educator in the field of higher education" and who has "relevant experience on a campus of higher education." And finally, subsection (b) plainly requires that the Director's "professional qualifications" be "comparable to those in colleges and universities."
Category III
The third set of questions asks about "potential legal ramifications" if the Board appoints someone to the directorship where either (a) the Director is not qualified, or (b) the Board failed to take some actions that the statutes require it to take. In my opinion, a failure to comply with the requirements of A.C.A. § 6-61-203 in this respect will not invalidate the Director's actions. The so-called "de facto" doctrine will instead apply to give validity to those actions while the appointee retains the position.[16] This so-called "fiction of law" has been summarized by the Arkansas Supreme Court as follows:
 A person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer *Page 11 
de facto with respect to his official acts, in so far as third persons are concerned.[17]
Thus, an officer who is in possession and exercising the duties of an existing office, if he or she has at least a fair color of right or title to the office (through, for example, election or appointment to the position by the legally constituted authority) is a de facto officer.[18] As such, the actions of such person are not "void ab initio," but rather are "valid and effectual, while he is permitted to retain the office, as though he were an officer by right."[19]
Category IV
This fourth and final set of questions is premised on the assumption that the Board will vote to appoint Interim Director Shane Broadway to the directorship at its next meeting. In relation to this expected appointment, you have asked me to determine whether the Board has fulfilled subsection 6-61-203(a)(1)(A)'s "search and selection process" requirement, including "substantial input, review, and recommendation from the Presidents Council." You have also asked me to determine whether Interim Director Shane Broadway meets the requirements of subsection 6-61-203(a)(3) and (b). If it is determined that he is qualified, you have further asked that I detail what led to this conclusion.
RESPONSE
As I and my predecessors have consistently explained over many years in opinions too numerous to cite, the opinion-writing function of this office is not a vehicle for making factual determinations.[20] Additionally, the questions you raise are matters *Page 12 
to be decided either by a court or by the Board, which is charged with finding the applicable facts and applying the law to those facts. While I therefore cannot resolve your final set of questions, I will attempt to further identify some of the legal framework for the factual analysis regarding the Director position.
As explained above, viewed from an ordinary-language perspective, the requirement under A.C.A. § 6-61-203(a)(3) that the Director "must have relevant experience on a campus of higher education" means that a candidate for the position of Director must have knowledge or practical wisdom in either (1) instructing others or (2) planning or directing education beyond high school. And at least some of this knowledge or wisdom must have been acquired on the campus of a college or university, which I interpret to mean as a participant in that higher education institution's mission, in either a teaching or administrative capacity. I believe this follows from a common-sense reading of subsection 6-61-203(a)(3).
As also indicated above, A.C.A. § 6-61-203(b) requires that a candidate for the position of Director have "professional qualifications" that are similar to the qualifications of those in analogous positions in colleges and universities. Given the Director's position as the senior executive officer of the Department of Higher Education, [21] it seems that the most analogous positions would be those held by senior higher education administrators. According to the U.S. Department of Labor, Bureau of Labor Statistics, advancement into education administration entails either a master's or a doctoral degree.[22] Therefore, while there is no explicit advanced degree requirement under A.C.A. § 6-61-203, it is my opinion that the legislature in all likelihood implicitly imposed such a requirement by mandating that the Director have professional qualifications that are similar to persons in analogous positions in colleges and universities.
To reiterate, the specific questions you have posed must be considered by the Board, and perhaps ultimately by another fact-finder such as a court, against a *Page 13 
background of actual facts. The foregoing may be of assistance in identifying the legal framework to guide the factual review. However, any person who fails to possess the statutory qualifications described above would be ineligible to serve as Director regardless of other factors, including the preference of the Board members or university presidents. If the leaders of the State's higher education institutions feel that the statutory qualifications are no longer appropriate, then they are free to seek legislative changes. Short of that, no exceptions to the current framework reveal themselves.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Director is the executive head of the Department of Higher Education. A.C.A. § 25-7-101(b) (Repl. 2002).
[2] A.C.A. § 6-61-203 (Repl. 2003) (emphasis added).
[3] It is a rule of statutory construction that where the legislature has used a phrase of well-known legal signification, it is presumed to have used the language in that sense.Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565 (1979);Werbe v. Holt, 217 Ark. 198, 229 S.W.2d 225 (1950).
[4] K.N. v. State,360 Ark. 579, 584, 203 S.W.3d 103 (2005) ("The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.").
[5] Simmons First National Bank v. Abbott,288 Ark. 304, 305, 705 S.W.2d 3 (1986) ("[I]t will always be presumed by the Court that the legislature intended to use words in their usual and natural meaning. . . .").
[6] These definitions come from Random House Webster'sUnabridged Dictionary (2nd ed., 2001). I have marked the page numbers in brackets.
[7] See Kyle v. State,312 Ark. 274, 277, 849 S.W.2d 935 (1993) (noting that in interpreting statutes, "we adhere to the basic rule of statutory construction which gives effect to the intent of the legislature, making use of common sense.")
[8] Garner's Modern American Usage
(Oxford Univ. Press, 2009), p. 648.
[9] See id. at 309 (explaining the rule that when punctuating lists, one must place a comma after each distinct item in the list, including between the last two items.).
[10] See Op. Att'y Gen. 2007-046 (and opinions cited therein.)
[11] Note 5, supra.
[12] Boston v. State,330 Ark. 99, 952 S.W.2d 671 (1997).
[13] Weldon v. Southwestern Bell Telephone Co.,271 Ark. 145, 607 S.W.2d 395 (1980).
[14] E.g., A.C.A. § 6-26-202(b)(1) (Repl. 2007) (prescribing qualifications of the director of the Arkansas Teacher Housing Development Foundation, and requiring a B.A., at least five years management experience (three years of which may be substituted by a M.B.A., a Ph.D., or a J.D.), and at least seven years' experience in certain named areas); A.C.A. § 12-8-104 (Repl. 2009) (Director of the Department of Arkansas State Police "shall either (A) Be a college graduate with at least a bachelor's degree in criminology, business administration, or a related field; (B) Have graduated from a standard high school or vocational school and have eight (8) years' previous experience in law enforcement or a related field with considerable supervisory and administrative experience; or (C) Have at least ten (10) years" experience in law enforcement.); A.C.A. § 20-48-210(b) (Repl. 2001) (requiring the Deputy Director of the Division of Developmental Disabilities of the Department of Human Services to "be a person of proven administrative ability and professional qualifications, preferably a Ph.D. degree or equivalent, but including at least a master's degree in psychology, education, social service, or other field of study approved by the board and . . . at least five (5) years' experience in mental retardation services.);
[15] Generally, use of the word "shall" is held to demonstrate a mandatory action, whereas the word "may" indicates a described action that is discretionary. E.g., Gonzales v. City ofDeWitt, 357 Ark. 10, 159 S.W.3d 298 (2004); Singleton v.State, 337 Ark. 503, 989 S.W.2d 533 (1999).
[16] If it is established that an appointee in fact is not qualified, there are three possible causes of action that may be brought to remove an individual who is ineligible to hold office — a writ of quo warranto, a usurpation action, and a taxpayer lawsuit under the provisions of Article 16, § 13 of the Arkansas Constitution. See Op. Att'y Gen. No. 2008-012 (discussing these alternatives).
[17] Pennington v. Oliver,245 Ark. 251, 254, 431 S.W.2d 843 (1968), quoting Faucette,Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279 (1918).
[18] In my opinion, the directorship undoubtedly is an office, based upon the functions, powers, and duties assigned by law to that position. See A.C.A. § 25-7-101; A.C.A. § 6-61-201 et seq.; Op. Att'y Gen. Nos. 2001-026, 2000-334 (discussing the essential characteristics of a public office.)
[19] Appleby v. Belden Corp.,22 Ark. App. 243, 247, 738 S.W.2d 807 (1987). See also
Op. Att'y Gen. Nos. 2003-194; 93-031.
[20] E.g., Op. Att'y Gen. Nos. 2010-144; 2008-178; 2006-153; 2003-142; 2001-069; 98-112; 95-161; 92-134; 87-452.
[21] Note 1, supra. See also
A.C.A. § 6-61-202(a)(2) (Repl. 2003) (making the Board and director responsible for "directing an integrated program for defining, popularizing, and securing acceptance of the major goals and objectives of higher education in Arkansas and for relating them to the state's various problems.")
[22] U.S. Dept. of Labor Occupational Outlook Handbook
(2010-11 ed.) at 5 (available at http://www.bls.gov/oco/ocos007.htm).